Debora SNOW, Plaintiff-Appellant,

v.

Michael BAYNE and Allstate Insurance Company, Defendants-Appellees,

Steven C. ANDERSON, Plaintiff-Appellant,

v.

Michael BAYNE and Allstate Insurance Company, Defendants-Appellees.

No. 1–782A180.

Court of Appeals of Indiana, First District.

May 23, 1983.

Rehearing Denied July 6, 1983.

Kent O. Stewart, Charles F. Miller, Jr., Stewart & Reeder, Indianapolis, Ronald R. Pritzke, Lineback & Lewis, Greenfield, for plaintiff-appellant.

Charles F. Robinson, Jr., John W. Hammel, Yarling, Robinson, Hammel & Lamb, Indianapolis, for defendants-appellees.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Debora Snow and Steven C. Anderson appeal from the granting of summary judgment in favor of the defendants in their separate actions against Michael Bayne and Allstate Insurance Company. Their appeals have been consolidated. We affirm in part and reverse in part.

## FACTS

Snow, Anderson, and Bayne were military personnel stationed at Fort Benjamin Harrison in Indianapolis, Indiana. Snow was from Connecticut; Bayne's home state was Michigan; and Anderson was from Indiana. On August 7, 1977, Snow and Anderson were riding in Bayne's car, which Bayne was driving, when the car left the road and struck a tree injuring Snow and Anderson. The ride began in front of Bayne's barracks at Fort Harrison and ended with the collision with the tree which also was on the military reservation.

Bayne's automobile was registered in his home state of Michigan and, as required by Michigan law,[1] was covered by a Michigan No-Fault Insurance Policy. This policy was issued by Allstate.

Snow and Anderson sued Bayne and Allstate in separate actions. Snow's complaint was in three counts, the first being against Bayne on a negligence theory seeking damages for personal injuries; the second count also sought recovery of damages from Bayne based upon his alleged willful and wanton misconduct. The third count of Snow's complaint sought recovery of personal protection insurance benefits directly from Allstate as a third party beneficiary to Bayne's no-fault insurance policy.

Anderson's complaint was in two counts. The first count sought damages from Bayne predicated upon Bayne's alleged willful and wanton misconduct. The second count sought recovery of personal protection insurance benefits from Allstate as a third-party beneficiary to the no-fault policy.

The trial court granted summary judgment in favor of Bayne on a request for a preliminary determination of applicable law, determining that the tort claims against Bayne were governed by Indiana law. Summary judgment was granted in favor of Allstate on the theory that the Michigan No-Fault Insurance Act had no extra-territorial effect, and that, therefore, the direct actions against Allstate could not be maintained in Indiana courts based upon an occurrence in Indiana.

## ISSUES

The issues, which we have renumbered and restated, presented for our determination are:

---

1. Mich.Comp.L.Ann., § 500.3101 *et seq.*

1. Did the trial court err in determining that Indiana law, rather than Michigan law, governed the substantive issues of the tort claims against Bayne based on negligence and willful and wanton misconduct?

2. Did the trial court err in denying Snow and Anderson the right to proceed directly against Allstate seeking recovery of personal protection insurance benefits as third-party beneficiaries under Bayne's Michigan No-Fault Insurance Policy?

## DISCUSSION AND DECISION

### Issue One

The tort claims of Snow and Anderson against Bayne whether predicated upon negligence or willful and wanton misconduct are governed by Indiana law. It is clearly established in this jurisdiction that with regard to tort actions the rule of *lex loci delicti* applies: that is, the law of the place of the wrong controls all substantive issues. *Louisville & N.R. Co. v. Revlett,* (1946) 224 Ind. 313, 65 N.E.2d 731; *Lee v. Lincoln National Bank & Trust Co.,* (1982) Ind.App., 442 N.E.2d 1147 (transfer pending); *Maroon v. State Dept. of Mental Health,* (1980) Ind.App., 411 N.E.2d 404, *trans. denied; Slinkard v. Babb,* (1953) 125 Ind.App. 76, 112 N.E.2d 876, *reh. denied* 125 Ind.App. 76, 117 N.E.2d 564, *trans. denied* 233 Ind. 633, 122 N.E.2d 463; *Eaton Corp. v. Appliance Valves Corp.,* (N.D.Ind.1981) 526 F.Supp. 1172; 27 I.L.E., *Torts,* § 3 (1960).

All of the activity which gives rise to the tort claims occurred in Indiana. Under the foregoing authorities, the substantive law of Indiana controls.[2] The trial court's preliminary determination on the issue of which law governed these counts was correct.

2. Even if the "most significant contacts" or "center of gravity" approach advocated by this writer in the concurring opinion in *Maroon v. State Dept. of Mental Health,* (1980) Ind.App., 411 N.E.2d 404, and as stated in the Restatement 2nd of Conflict of Laws, § 145 (1971), were adopted, Indiana law would control. The injury occurred in Indiana; the alleged tortious conduct occurred in Indiana; all the parties were stationed and living on a military reserva-

### Issue Two

The trial court granted summary judgment in favor of Allstate on the third count of Snow's complaint and the second count of Anderson's, apparently on the theory that these were tort claims and that under Indiana law an injured party cannot maintain a direct action against a tortfeasor's insurer. Indeed, Allstate argues that although Snow and Anderson purport to sue as third-party beneficiaries to the Allstate policy, their actions are personal injury claims which Indiana law does not permit to be asserted against the insurer. Both the trial court and Allstate misperceived the nature of the claims against Allstate.

An action against an insurance company seeking recovery of benefits under a no-fault automobile insurance policy is a contract action, not an action for personal injury. *Smith v. State Farm Mutual Automobile Insurance Co.,* (1979) 152 Ga.App. 825, 264 S.E.2d 296, *rev'd on other grounds* in *State Farm Mutual Automobile Insurance Co. v. Smith,* (1980) 245 Ga. 654, 266 S.E.2d 505.

Bayne's automobile was registered in Michigan. Under Michigan law, he was required to have a Michigan no-fault policy. Mich.Comp.L.Ann. § 500.3101. Allstate policy was issued pursuant to the Michigan no-fault law which provides that the owner or registrant must maintain coverage for payment of personal protection insurance benefits. *Id.* The Michigan law further provides that "[u]nder personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle ..." and that "[p]ersonal protection insur-

tion in Indiana; and the relationship among the parties commenced and ended in, and existed only in Indiana. Thus, there were no significant contacts with any state other than Indiana. The mere fact that Bayne's automobile was registered in his home state of Michigan and was insured there is not such a significant contact as to override the other contacts enumerated which were exclusively with Indiana.

ance benefits are due . . . without regard to fault." Mich.Comp.L.Ann. § 500.3105. The no-fault law prescribes the benefits payable under personal protection insurance. Mich.Comp.L.Ann. § 500.3107. With regard to accidents occurring outside the state of Michigan, the act provides:

> "Personal protection insurance benefits are payable for accidental bodily injury suffered in an accident occurring out of this state, if the accident occurs within the United States, its territories and possessions or in Canada, and the person whose injury is the basis of the claim was at the time of the accident a named insured under a personal protection insurance policy, his spouse, a relative of either domiciled in the same household or an occupant of a vehicle involved in the accident whose owner or registrant was insured under a personal protection insurance policy or has provided security approved by the secretary of state under subsection (4) of section 3101." (Footnote omitted.)

Mich.Comp.L.Ann. § 500.3111.

The policy in question under Part 2, Coverage VA–Personal Protection Insurance Benefits, provided that Allstate would pay, in accordance with Chapter 31 of the Michigan Insurance Code, to each eligible injured person, personal protection benefits as defined. Persons sustaining bodily injury while occupying the insured motor vehicle are among those included in the policy definitions of "eligible person." The exclusions in this part of the policy relating to out-of-state accidents exclude "bodily injury sustained by any person other than the named insured or any relative, *while not occupying any motor vehicle,* if the accident occurs outside the State of Michigan." Further, in accordance with the Michigan law, the policy states that "[t]his insurance applies only to accidents which occur . . . within the United States of America, its territories or possessions, or Canada." (Emphasis added.) Record at 40–42.

Under the clear terms of the policy, Snow and Anderson were eligible injured persons, they were not excluded from coverage in Indiana because they were occupying the insured vehicle, and the accident happened in the United States.

In *Fellippello v. Allstate Insurance Co.,* (1979) 172 N.J.Super. 249, 411 A.2d 1137, *cert. denied* 85 N.J. 481, 427 A.2d 574, the automobile involved was registered in New Jersey and covered by a New Jersey no-fault policy issued pursuant to the no-fault law of that state. The injured plaintiff was a New York resident, and the accident occurred in Connecticut. The court held the plaintiff was entitled to recover personal injury protection benefits, and further held a policy provision excluding coverage to out-of-state accidents was void as contrary to the New Jersey no-fault law.

In *Goldstein v. First General Insurance Co.,* (1978) 258 Pa.Super. 284, 392 A.2d 796, the plaintiff was injured in a Pennsylvania accident in a car borrowed from a New Jersey resident and insured under the New Jersey no-fault law. The court held the policy exception for accidents outside New Jersey was void under New Jersey law, and found plaintiff eligible for benefits, *quoting* from *Cirelli v. Ohio Casualty Insurance Co.,* (1975) 133 N.J.Super. 492, 496, 337 A.2d 405, 407:

> "The . . . policy in accord with the New Jersey No Fault Law . . . affords unlimited coverage to the assured for medical expenses without any caveat respecting the place of accident. This unlimited coverage represents a deliberate legislative policy which is implemented by the clear language of the insurance contract.
>
> . . . .
>
> *The insurance company is bound by the terms of its policy—terms which are enforceable against it, regardless of the locus of the accident."* (Emphasis added.)

The purpose of the Michigan no-fault law is to provide prompt monetary relief to persons injured in automobile accidents, *Hill v. Aetna Life and Casualty Co.,* (1977) 79 Mich.App. 725, 263 N.W.2d 27; *Block v. Citizens Insurance Company of America,* (1981) 111 Mich.App. 106, 314 N.W.2d 536, at the lowest cost to the system and the individual, *Dolson v. Assigned Claims·Facil-*

ity, Sec'y of State, (1978) 83 Mich.App. 596, 269 N.W.2d 239, and to keep minor personal injury cases out of court. *McKendrick v. Petrucci,* (1976) 71 Mich.App. 200, 247 N.W.2d 349. In construing the policy here, we must keep these announced purposes in mind. In so doing, we are not applying Michigan law to an Indiana occurrence. Rather, we are construing a Michigan contract of insurance issued pursuant to Michigan law which is a part of the insurance contract.

That the liability under the personal insurance protection part of the policy is contractual rather than one springing from tort concepts is clear. *Smith v. State Farm Mutual.* The Michigan No-Fault Insurance Act was enacted as a substitute for common law tort remedies, except in certain specified cases. *Casualty Reciprocal Exchange v. Vancil,* (1980) 100 Mich.App. 284, 299 N.W.2d 49; *Vitale v. Danylak,* (1977) 74 Mich.App. 615, 254 N.W.2d 593. "The basic concept of no-fault insurance is the payment of certain benefits for losses resulting from automobile accidents without regard to tort liability." 7 Am.Jur.2d, *Automobile Insurance,* § 348 (1980). In addition, no-fault plans are remedial and must be liberally construed to favor victims of accidents, the intended beneficiaries of such plans. *Burk v. Warren,* (1981) 105 Mich.App. 556, 307 N.W.2d 89.

■ Considering the specific language of the policy, hereinbefore referred to; the specific terms of the Michigan No-Fault Insurance Act which constitutes a part of the policy; and the holdings in *Fellippello* and *Goldstein,* we believe Snow and Anderson each have a contractual right of action against Allstate for personal protection insurance benefits under the policy. Allstate is bound by its policy, and the policy terms are enforceable against it regardless of the fact that the accident occurred in Indiana. *Goldstein; Cirelli.*

**3.** We express no opinion concerning the questions of the timeliness of filing the action under the policy terms or whether either Snow or Anderson have any entitlement to benefits under certain policy exceptions. Those questions, although alluded to in the motions for summary

Therefore, it was error for the trial court to grant summary judgment in favor of Allstate as to Snow's third count and Anderson's second count.[3]

Judgment affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. Costs assessed one-half to appellants and one-half to appellees.

ROBERTSON, P.J., and NEAL, J., concur.

judgment, were neither presented to nor ruled upon by the trial court, nor were they argued in this court. Thus, those questions await submission to and resolution by the trial court prior to being reviewed here.