**Milton DONALD, Plaintiff–Appellant,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant– Appellee.**

No. 93–2595.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 3, 1994.

Decided March 9, 1994.

Peter B. Stewart, Stewart & Irwin, Indianapolis, IN, James D. Johnson (argued), Evansville, IN, Daniel J. Temming, Robbins, Kelly, Patterson & Tucker, Cincinnati, OH, for plaintiff-appellant.

Donald R. Wright (argued), Keith M. Wallace, Wright, Evans & Daly, Evansville, IN, for defendant-appellee.

Before CUMMINGS and CUDAHY, Circuit Judges, and ROSZKOWSKI, District Judge.*

CUMMINGS, Circuit Judge.

On June 25, 1990, plaintiff Milton Donald ("Donald") severely injured his right arm when he attempted to remove his clothes from laundry equipment that he had neglected to switch off. This suit followed. Plaintiff sued the University of Evansville, Indiana (the "University"), which owned the equipment, and Daryl Buente ("Buente"), an employee of the University who had given Donald permission to use the equipment, alleging negligence (R. 1 at 2–4, Complaint Count One). The parties settled that claim and it is not at issue here. In addition, however, plaintiff sued the University's insurer, Liberty Mutual Insurance Company ("Liberty Mutual"), alleging breach of contract on account of Liberty Mutual's refusal to pay him $5,000 in benefits (id. at 4–5,

---

* The Honorable Stanley J. Roszkowski, District Judge for the Northern District of Illinois, is sitting by designation.

Complaint Count Two), and alleging that Liberty Mutual breached a duty to deal with him in good faith (*id.* at 5–6, Complaint Count Three). Plaintiff, a citizen of Ohio, sought contract damages on Count Two and punitive damages on Count Three.

Due to the parties' diverse citizenship, and because the amount in controversy at the time the suit was filed exceeded $50,000, the district court had jurisdiction over the dispute. 28 U.S.C. § 1332. The parties agree that Indiana law governs the action. Cf. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Having determined that Indiana law does not allow plaintiffs such as Donald to bring suit directly against insurance companies to recover on policies issued to third parties, the district court entered summary judgment in favor of Liberty Mutual on both remaining counts of Donald's complaint. We reverse.

### Background

At the time of his accident Donald, a recent graduate of the University, worked as an instructor at a basketball camp conducted on the University premises but not sponsored by the University. After camp ended on June 25 plaintiff asked Buente if he could use the Athletic Department's laundry equipment because he could not afford to use a laundromat. Buente gave Donald permission and showed him how to work both the clothes washer and the water extractor. After washing his clothes in the washer Donald transferred them to the extractor and turned it on. The extractor did not have a timer or automatic shut-off; it had to be turned off manually by moving a switch to off and depressing a brake pedal. Donald tried to remove his clothes from the extractor without first turning the machine off. His hand became entangled in the clothing, resulting in serious injury and high medical expenses.

The University was insured by Liberty Mutual[1] for, *inter alia,* "bodily injury and property damage liability" (App. 15) ("Coverage A"), including liability such as that alleged in Count One of Donald's Complaint. It was also insured for "medical payments" to certain persons injured on its premises (App. 17) ("Coverage C"). Donald's appeal concerns Liberty Mutual's refusal to pay him $5,000 in medical payment benefits under Coverage C of the insurance contract between the University and Liberty Mutual. Coverage C provides, in full (App. 17–18, 31):

### COVERAGE C. MEDICAL PAYMENTS

1. Insuring Agreement.

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations; provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limits of insurance. We will pay reasonable expenses for:

(1) First aid at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

2. Exclusions.

We will not pay expenses for "bodily injury":

a. To any insured.

---

1. More accurately, the University was insured through a policy issued to the "Board of Higher Education and Ministry of the United Methodist Church."

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an employee of any insured, if benefits for the "bodily injury" are payable or must be proved under a workers compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard."

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

The "applicable limit of insurance" for Coverage C was $5,000 (App. 13). Excluded from medical payment benefits under Coverage C were "any insured" persons (Coverage C(2)(a)). Section II of the contract defined "who is an insured" in relevant part as the executive officers, directors, stockholders and employees of the entity designated in the insurance contract as the "named insured" (App. 13, 18, 28), in this case the University through the Board of Higher Education and Ministry of the United Methodist Church. It follows from the terminology employed by this contract that persons entitled to medical payment benefits under Coverage C are *not* "insureds" under the contract, which led to some unfortunate cross-talk and confusion among the parties to this suit. This opinion will refer to persons eligible for medical payment benefits under Coverage C as "covered" individuals to distinguish them from "insureds" who are, by definition, not covered under Coverage C.

After the accident Donald's attorney and representatives of Liberty Mutual corresponded by mail and over the telephone. It was clear that Donald was exploring the possibility that the University and Buente might be liable in tort for his injuries; if they were, then Liberty Mutual would be required under Coverage A to pay the amount of that liability. Liberty Mutual took the position that there was no negligence on the part of the University or Buente, and that Donald's claim to the contrary was very weak. Donald also inquired whether the University's contract of insurance provided for any medical payment benefits. In this context Donald's attorney referred to Donald as an "insured," apparently meaning by this that Donald would be eligible for any medical payment benefits included in the University's policy. This precipitated confusion on the part of Liberty Mutual's representatives, who were of the opinion that Donald probably was not an "insured" under the policy. They refused to release a copy of the policy to Donald's attorney, however, who continued to refer to Donald as an "insured," unaware that by the terms of the policy any "insured" was by definition not covered under Coverage C.

During these negotiations Liberty Mutual forwarded a "Release and Settlement of Claim" form that recited (R. 49, Ex. H):

> For the sole consideration of FIVE THOUSAND DOLLARS ... the undersigned hereby releases and forever discharges UNIVERSITY OF EVANSVILLE and all other persons, firms and corporations from all claims and demands, rights and causes of action of any kind the undersigned now has or hereafter may have on account of ... an occurrence which happened on or about JUNE 25, 1990.... This release expresses a full and complete SETTLEMENT of a liability....

Donald's counsel refused this offer of settlement but did offer that Donald would execute a release of Liberty Mutual's liability for medical payment benefits in exchange for the $5,000. Liberty Mutual refused.

In November 1991 Donald filed this suit against the University and Buente, alleging negligence, and against Liberty Mutual, alleging breach of contract and bad faith dealings. After the University and Buente settled Donald's negligence claims, his suit against Liberty Mutual proceeded. Eventually Liberty Mutual moved for summary judgment on Count Three (bad faith dealings) of Donald's Complaint (R. 37 at 11), and

Donald cross-moved for summary judgment on both counts of his Complaint (breach of contract and bad faith dealings) (R. 48).

With respect to the breach of contract claim, plaintiff argues, and defendant does not dispute, that plaintiff is eligible for medical payment benefits under Coverage C: Donald suffered "bodily injury" within the defined meaning of the term while on premises owned by the University, the injury occurred within the "coverage territory" during the policy period, and Donald was not an "insured" within the meaning of the coverage exclusion, nor was he excluded from coverage for any of the other reasons enumerated in Coverage C. Defendant's argument that Donald was not entitled to summary judgment on his claim to the $5,000 medical payment benefits rested primarily on the contention that Donald had not submitted the necessary paperwork required by the reporting provision of Coverage C; defendant also argued that regardless of whether Donald met the requirements for coverage under Coverage C, he was not entitled to sue Liberty Mutual to enforce the provisions of its contract with the University.

The parties directed most of their energy toward Donald's claim that Liberty Mutual had dealt with him in bad faith. In this regard Donald argued that it was bad faith for Liberty Mutual to offer him the $5,000 payment to which he was entitled under Coverage C in exchange for a release of all of his claims against the University and Buente. Liberty Mutual responded that at the time it made the settlement offer Donald's eligibility for medical payment benefits was unclear, due in part to his attorney's insistence that Donald was an "insured" under the policy, and that his negligence claims were so weak that it could not be bad faith to offer to settle the whole for $5,000.

The district court denied Donald's motion for summary judgment and granted Liberty Mutual summary judgment on both counts, although Liberty Mutual had only argued for summary judgment on Count Three. Cf. *Lowenschuss v. Kane*, 520 F.2d 255, 261 (2d Cir.1975); *Tripp v. May*, 189 F.2d 198, 200 (7th Cir.1951). With respect to Count Two of Donald's Complaint, the court held that under Indiana law, Donald could not sue Liberty Mutual on its contract with the University. With respect to Count Three, the court held that under Indiana law an insurer owes no duty of good faith dealings to claimants not privy to the contract between the insurer and the insured, and that Donald therefore could not sue Liberty Mutual on the ground that it had not dealt with his claim in good faith. This appeal followed. Reviewing the grant of summary judgment *de novo, Harris v. Bellin Memorial Hospital*, 13 F.3d 1082, 1083–84 (7th Cir.1994), we reverse.

*Analysis*

Because the district court held that Donald could not sue Liberty Mutual either on a breach of contract theory in Count Two or for bad faith dealings in Count Three of his Complaint, the court granted the defendant summary judgment without reaching many of the issues raised by the parties. Before we address the merits of the parties' claims to summary judgment on the two counts, then, we first address Donald's right to sue Liberty Mutual.

*A. Donald's Right to Sue Liberty Mutual*

■ We hold that Donald, a third party beneficiary of the medical payment provision of the University's contract with Liberty Mutual, may sue to enforce that provision in Count Two of his Complaint, and that he may sue Liberty Mutual in Count Three for breaching a duty to deal with him in good faith.

*1. Count Two*

■ The district court granted Liberty Mutual summary judgment on Count Two (breach of contract) of Donald's Complaint because it held that under Indiana law an injured person not party to the contract of insurance cannot sue the insurer directly to recover for his losses. Because this aspect of Indiana law only applies in a tort context, while Donald is suing Liberty Mutual in contract, the district court misapplied Indiana law to Donald's suit.

The court was correct that Indiana, unlike several states, is not a so-called "direct action" state. "Indiana has held that a tort action on a contract theory by an injured third party directly against the liability carrier is inappropriate." *Cromer v. Sefton,* 471 N.E.2d 700, 703 (Ind.Ct.App.1984) (citing *Martin v. Levinson,* 409 N.E.2d 1239 (Ind. Ct.App.1980)); accord *Matter of Hendrix,* 986 F.2d 195, 200 (7th Cir.1993). Ordinarily, an injured person must sue either the tortfeasor in tort, or perhaps his own insurance company in contract, in order to recover for his losses. He cannot sue the tortfeasor's insurance company directly—at least before obtaining a judgment against the insured, see, *e.g., Cromer,* 471 N.E.2d at 703 ("[A] successful personal injury plaintiff can bring an action against the liability carrier if it refuses to honor its contract." (citing *Bennett v. Slater,* 154 Ind.App. 67, 289 N.E.2d 144 (1972)))—either in tort or in contract. In direct action states, by contrast, legislation allows the injured person to sue the tortfeasor's insurer directly, without having first to obtain a judgment against the insured. 8 Appleman, *Insurance Law and Practice* § 4861 (Revised Vol.1981) ("Because direct actions against a liability insurer contravene the common law, such a right must be expressly sanctioned by the legislature and not merely inferentially deduced."). Because Indiana is not a direct action state, therefore, Donald could not sue Liberty Mutual on Count One of his Complaint, which alleged negligence on the part of the University and its employee.

■ It does not follow from this, however, that Donald cannot sue Liberty Mutual to recover the $5,000 medical payment benefits which he claims under Coverage C. The concept of direct action against an insurer applies when an injured party seeks to sue the insurer directly to recover sums for which the insured would otherwise be liable in tort. See, *e.g., Verhein v. South Bend Lathe, Inc.,* 598 F.2d 1061, 1064 (7th Cir. 1979) (noting that under the Wisconsin direct action statute, unless the injured third party could allege a valid theory of the insured's liability, there would be no basis upon which to hold the insurer liable). But Coverage C is not limited to damages in the way of medical payments incurred by the injured person on account of a tort committed by the insured;[2] if Donald is entitled to medical payment benefits under Coverage C, it is not due to any liability on the part of the University. Hence Indiana's position on direct action is irrelevant to whether Donald can sue Liberty Mutual directly to recover the medical payment benefits. Cf. *Bankers Trust Co. v. Old Republic Insurance Co.,* 959 F.2d 677, 682 (7th Cir.1992) (When the plaintiff was not suing the insurance company to establish that its insured had committed a tort against the plaintiff, but rather was suing to establish that the insurance policy remained in force, "[s]uch a suit is not a direct action suit against an insurer." (citation omitted)).[3]

**2.** Coverage A applies to "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury'" (App. 15), excluding damages for which the insured becomes liable "by reason of the assumption of liability in a contract or agreement" (*id.*). Coverage A, therefore, applies to liability incurred by the insured in tort. This would include both negligence and strict liability. Coverage C explicitly provides that medical payment benefits will be made "regardless of fault" (Coverage C(1)(b)). Taken by itself this could mean that payments will be made even when the insured is strictly liable, but that there must be some liability on the part of the insured before medical payment benefits will be made. Such a reading is precluded, however, by the language of Coverage A, which already applies to all tort liability. Coverage C's "regardless of fault" language must mean, therefore, that medical payment benefits will be paid *regardless of the insured's liability.*

This is consistent with general interpretations of medical payment provisions. See, *e.g.,* 8A Appleman, *Insurance Law and Practice* § 4902.05 (Revised Vol.1981) ("[T]his provision is not designed to protect the insured from his legal liability but to insure the payment of medical expenses.... [L]egal liability is not in issue....").

**3.** The policies that underlie many states' unwillingness to allow direct actions against the tortfeasor's insurer do not necessarily apply in contexts other than tort. Illinois courts have explained that state's prohibition against direct actions by noting that the "rationale ... is that disclosure of liability coverage at a trial against an insured for injuries resulting from his negligence constitutes prejudicial error.... Thus, adherence to this policy is required when the issue of the insurer's liability would be intermingled with that of the liability of the insured...." *Reagor v. Travelers Insurance Co.,* 92 Ill.App.3d

■ Donald's right to sue Liberty Mutual rests, not on whether Indiana has authorized direct actions against a tortfeasor's insurer, but rather on whether he is a third party beneficiary of the contract providing for medical payment benefits. "A third party beneficiary contract requires first, that the intent to benefit the third party be clear, second, that the contract impose a duty on one of the contracting parties in favor of the third party, and third, that the performance of the terms necessarily render to the third party a direct benefit intended by the parties to the contract." *Mogensen v. Martz,* 441 N.E.2d 34, 35 (Ind.App.1982) (citation omitted). The weight of authority suggests that medical payment provisions regarding injured third parties are third party beneficiary contracts.

> Since ... recovery [by the injured party under the medical payment provision] is completely independent of liability on the part of the insured, insurance under [this provision] is closely akin to a personal accident policy. * * * Medical provisions ... are a form of ... group accident insurance provided at minimal cost with a named insured as the entity through whom the coverage is issued. * * * Such coverage ... creates a direct liability to the contemplated beneficiaries.

8A Appleman, *Insurance Law and Practice* § 4902 (Revised Vol.1981) (discussing medical payment provisions in automobile insurance policies). See also *Hein v. American Family Mutual Insurance Co.,* 166 N.W.2d 363, 365 (Iowa 1969) (medical payment provision is "a type of third-party beneficiary health insurance contract for which the insurer charges a separate portion of the total premium"); cf. *Motto v. State Farm Mutual Insurance Co.,* 81 N.M. 35, 36, 462 P.2d 620, 621 (1969) (medical payment provision creates a direct liability of the insurer); *Johnson v. New Jersey Manufacturers Indemnity*

*Insurance Co.,* 69 N.J.Super. 184, 174 A.2d 4, 8 (1961) (medical payment clauses provide separate accident insurance coverage).

■ We have no reason to believe that Indiana would not follow this line of authority. Indeed, at least one Indiana court has come close to this position. In *Snow v. Bayne* the court, applying Indiana law, allowed injured third parties to sue the insured's insurer directly, as third party beneficiaries under a no-fault automobile insurance policy, to recover "personal protection insurance benefits." 449 N.E.2d 296 (Ind.Ct. App.1983). In that case, as in this one, the contract of insurance provided for the payment of certain benefits "without regard to fault." *Id.* at 299. The court held that an action to recover the personal protection insurance benefits was a contract action, not a tort action, and that the injured parties, who were eligible for the defined benefits, were third party beneficiaries of the contract between the insured and the insurer. *Id.* at 298, 300.

We hold, therefore, that Donald is not barred by Indiana's position on direct actions from bringing suit, in Count Two of his Complaint, directly against Liberty Mutual to recover the medical payment benefits provided by Coverage C. We hold further that Donald is a third party beneficiary of the contract between the University and Liberty Mutual and that he is therefore entitled to sue Liberty Mutual on its contract with the University. See, *e.g., Mogensen,* 441 N.E.2d at 35 ("Third party beneficiaries may directly enforce a contract in Indiana." (citation omitted)).

### 2. Count Three

■ Because the district court held, erroneously as we have seen, that Donald could not maintain an action against Liberty Mutual on Count Two (breach of contract) of his

99, 47 Ill.Dec. 507, 510, 415 N.E.2d 512, 515 (1980) (citation omitted) (allowing the injured party to maintain a declaratory judgment action directly against the tortfeasor's insurer to determine the extent of the insured's coverage); accord *Bankers Trust Co.,* 959 F.2d at 682 ("The reason for [the] refusal [to allow direct actions] ... is to protect the insurance company from the hostility of juries.") (allowing plaintiff to maintain a declaratory judgment action directly against the tortfeasor's insurer to establish that the insured's policy remained in force; noting that the policy underlying most states' refusal to allow direct actions is "wholly unengaged by a case such as this"). Likewise, in the case at bar, Liberty Mutual's obligation under Coverage C is wholly unrelated to the issue of the University's liability.

Complaint, it proceeded to hold that Donald also could not maintain an action against Liberty Mutual on Count Three (bad faith dealings). It is true that in Indiana an injured third party cannot sue the tortfeasor's insurer for handling his claim in bad faith. *Eichler v. Scott Pools, Inc.*, 513 N.E.2d 665, 667 (Ind.App.1987). "There is no duty running from the insurer to the claimant to settle a claim, nor is the claimant a third-party beneficiary of the duty owed the insured by the insurer." *Id.* Thus if Donald were merely a claimant for damages owing him on account of an alleged tort committed by the University, as in Count One of his Complaint (alleging negligence on the part of the University and its employee), Liberty Mutual would owe him no duty to settle his claim and he could not sue even if Liberty Mutual acted in bad faith. Because, however, Donald is not claiming the medical payment benefits on account of any liability of the University but rather as a third party beneficiary of the medical payment provision, Liberty Mutual does owe him a duty of good faith dealing. Restatement (Second) of Contract §§ 205, 304 (1979); cf. *Furno v. Citizens Insurance Co. of America*, 590 N.E.2d 1137, 1141 (Ind.App.1992) (plaintiff physician was not a third party beneficiary of workman's compensation insurance contract and hence insurer owed him no duty of good faith; implying that a duty of good faith would be owed if the plaintiff were a third party beneficiary). Donald may sue Liberty Mutual in Count Three of his Complaint, then, for breach of the duty, owed him as a third party beneficiary of its contract with the University, to deal with him in good faith.

Having settled that Donald may sue Liberty Mutual on Counts Two and Three of his Complaint, we proceed to address the parties' claims to summary judgment.

### B. The Parties' Cross–Motions for Summary Judgment

Liberty Mutual moved the district court for summary judgment on Count Three of Donald's Complaint, which alleged that Liberty Mutual had acted in bad faith when it failed to pay Donald $5,000 in medical payment benefits to which he was entitled.

Donald cross-moved for summary judgment on Count Two (breach of contract) as well as on Count Three of his Complaint. We address the two counts in order.

### 1. Count Two

■ "In reviewing a denial of a motion for summary judgment, we apply the same standard that should have been applied by the district court.... We will reverse the decision to deny such a motion only if we find it plain that there is no genuine issue of material fact for trial. Our review of this question is plenary." *Pennbarr Corp. v. Insurance Co. of North America*, 976 F.2d 145, 149 (3d Cir.1992) (citation omitted). Thus Donald's motion for summary judgment should be granted only if, viewing the facts and the reasonable inferences therefrom in the light most favorable to Liberty Mutual, it is clear that no reasonable jury could find in Liberty Mutual's favor. *Harris*, 13 F.3d at 1083–84.

The parties do not dispute that when he was injured on the University's property, Donald became eligible under the terms of Coverage C for medical payment benefits: He suffered "bodily injury" (as defined by the contract of insurance) caused by an accident on premises owned by the University (Coverage C(1)(a)), and he did not fall within the enumerated exclusions (Coverage C(2)). Because he incurred emergency medical expenses as a result of this accident, Liberty Mutual was obligated to pay those expenses up to the applicable limit of insurance (Coverage C(1)(b)), provided that certain conditions were met. The parties do not dispute that Donald's accident took place in the "coverage territory" and during the policy period, and Liberty Mutual apparently never requested Donald to submit to a physical examination, so that two of the conditions were met (Coverage C(1)(a)). Liberty Mutual's only argument against summary judgment on Count Two (aside from its argument, discussed above, that Donald cannot sue to enforce the medical payment provision) is that Donald's expenses, incurred within one year of the date of the accident, were not "reported to us [Liberty]" within one year of the

date of the accident (Coverage C(1)). R. 70 at 3.

█ Liberty Mutual advanced this argument below but did not refer to it before this Court, thereby waiving it. Cf. *Maher v. International Brotherhood of Electrical Workers,* 15 F.3d 711 (7th Cir.1994). Liberty Mutual was on notice that Donald's appeal not only included the district court's grant of summary judgment in favor of Liberty Mutual but also included its denial of summary judgment in his favor. R. 112 (Amended Notice of Appeal). Donald's opening brief before this Court addressed his claim to summary judgment on Count Two of his Complaint. Appellant's Opening Brief at 9, 11. Liberty Mutual elected to put all its Count Two eggs in one basket, arguing before this Court that Donald could not sue to enforce the medical payment provision of the University's policy. It did not address whether Donald would be entitled to summary judgment if he were allowed to sue on the contract. We consider, therefore, that Liberty Mutual has waived the argument that Donald did not adequately report his expenses within one year of incurring them. We note, however, that the record is clear that Donald did report his expenses—in exactly the form requested by Liberty Mutual—within the required time period.[4]

Donald is therefore entitled to summary judgment on Count Two of his Complaint.

### 2. Count Three

Donald requests this Court to remand Count Three of his Complaint for further proceedings. He does not argue that he himself is entitled to summary judgment on that Count. Appellant's Opening Brief at 19, 22. We review the grant of summary judgment in favor of Liberty Mutual *de novo,* viewing the facts and the reasonable infer-

ences therefrom in the light most favorable to Donald. Cf. *Harris,* 13 F.3d at 1083–84.

█ "[T]o recover punitive damages [such as Donald seeks herein in Count Three of his Complaint] in a lawsuit founded upon a breach of contract, the plaintiff must plead and prove the existence of an independent tort of the kind for which Indiana law recognizes that punitive damages may be awarded.... Our intent [is] to prohibit the recovery of punitive damages, which is a tort remedy, where no tort [has] been established." *Erie Insurance Co. v. Hickman by Smith,* 622 N.E.2d 515, 518 (Ind.1993) (citing *Miller Brewing Co. v. Best Beers of Bloomington, Inc.,* 608 N.E.2d 975, 984 (Ind.1993)).

█ Indiana now recognizes "a cause of action for the tortious breach of an insurer's duty to deal with its insured in good faith...." *Hickman,* 622 N.E.2d at 519. Although Donald is not an insured but is rather a third party beneficiary of one of the provisions in the contract of insurance, the same factors that militated in favor of recognizing a duty of good faith and fair dealing between the insurer and its insured in *Hickman* persuade us that Indiana would impose the same duty upon an insurer and a third party beneficiary of the insurance policy. Cf. *id.* at 518. Liberty Mutual did, therefore, owe Donald as a third party beneficiary of the insurance contract the same duty of good faith and fair dealing that it would owe its insured in Indiana.

We held above that Liberty Mutual breached its contract by refusing to pay medical payment benefits to Donald. This does not entail, however, that Liberty Mutual committed a tort in so doing. "That insurance companies may, in good faith, dispute claims, has long been the rule in Indiana. * * * [A] jury's determination that a claim was, in retrospect, incorrectly denied is not

---

4. The accident occurred on June 25, 1990. In December 1990 Donald's attorney asked Liberty Mutual about possible medical payment benefits. Appendix 37, 38. Kathy Pruiett, a senior claims adjuster for Liberty Mutual, responded with a letter explaining that "University of Evansville does have premises medical payment coverage. However, this coverage is applied after any other coverage in effect has paid [sic]. Therefore, I would need copies of the explanation of benefit forms from the insurance carrier making payments." *Id.* at 37. She refused to disclose copies of the policy to Donald's attorney. In March 1991 Donald's attorney provided the requested explanation of benefits form, which indicated that over $5,000 in medical expenses had not been covered by Donald's insurer. *Id.* at 39–41.

sufficient to establish a breach of the duty to exercise good faith...." *Hickman*, 622 N.E.2d at 520. In order to demonstrate that Liberty Mutual committed a tort, Donald must show more than the fact that Liberty Mutual denied him benefits to which he was entitled.

While the Indiana Supreme Court has not defined the precise parameters of the tort of bad faith dealing by an insurer, it has observed that:

> The obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim.

*Hickman*, 622 N.E.2d at 519. In this case Donald argues, first, that Liberty Mutual's refusal to pay him policy proceeds was unfounded and second, that by requiring him to release the University from all liability before Liberty Mutual would forward the $5,000 medical payment benefits, it exercised an unfair advantage to pressure him into settlement of his claim. This appears to fall within the broad description of the tort provided by the Indiana Supreme Court. *Id.* Hence if Donald can prove by a preponderance of the evidence either that Liberty Mutual's refusal to pay the medical payment benefits was unfounded, or that it acted improperly by requiring him to release the University from liability before it would pay the medical payment benefits, Donald will have demonstrated that Liberty Mutual committed the tort of bad faith dealings by an insurer.

Donald is not yet out of the woods. "[I]n most instances, tort damages for the breach of the duty to exercise good faith will likely be coterminous with those recoverable in a breach of contract action," *Hickman*, 622 N.E.2d at 519, and Donald will receive his contract damages as a result of the entry of summary judgment in his favor on Count Two. What Donald wants on Count Three is punitive damages. In Indiana "the mere finding by a preponderance of the evidence that the insurer committed the tort will not, standing alone, justify the imposition of punitive damages." *Id.* at 520. "Punitive damages may be awarded only if there is clear and convincing evidence that the defendant 'acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing....'" *Id.* (quoting *Bud Wolf Chevrolet, Inc. v. Robertson*, 519 N.E.2d 135, 137–138 (Ind.1988)).

Donald has raised a genuine issue of material fact as to whether Liberty Mutual's offer to forward him $5,000 in exchange for a release of all liability constituted malice, fraud, gross negligence, or oppressiveness. Offering a payment to which the claimant is clearly entitled as the sole consideration for settling a disputed claim can constitute bad faith in Indiana. *Vernon Fire & Casualty Insurance Co. v. Sharp*, 264 Ind. 599, 349 N.E.2d 173 (1976). In *Vernon Fire & Casualty* the Indiana Supreme Court held that when the defendant insurers "had refused, and would continue to refuse, to pay the plaintiff *even the amount which the insurance companies conclude he was entitled to*, until the plaintiff obtained a release of [his business manager's separate] claim," *id.* 349 N.E.2d at 181 (emphasis in original), such behavior constituted a tort, *id.* at 184, for which punitive damages would be appropriate. *Id.* at 185.

In support of its claim to summary judgment Liberty Mutual argues (1) that Donald was not, at the time it offered to settle, clearly entitled to the medical payment benefits, and (2) that his liability claim against the University was never "disputed"—Liberty Mutual's position is that the University's lack of liability was clear. These are reasonable inferences from the evidence, but they are not the only reasonable inferences. On Liberty Mutual's motion for summary judgment we must draw all reasonable inferences in Donald's favor. Liberty Mutual has failed to demonstrate that it is entitled to judgment as a matter of law on the issue of its good faith during the settlement discussions.

The grant of summary judgment in Liberty Mutual's favor must be reversed.

### Conclusion

For the foregoing reasons, the grant of summary judgment in favor of defendant Liberty Mutual on Counts Two and Three of Donald's Complaint is reversed. The case is remanded for further proceedings on Count Three and with directions to enter summary judgment in Donald's favor on Count Two.