Claudette CAIN, Appellant–Plaintiff,

v.

Roger GRIFFIN, Lucy Griffin, and Auto–Owners Insurance, Appellees–Defendants.

No. 61A01–0409–CV–404.

Court of Appeals of Indiana.

April 26, 2005.

Jennifer R. Wrede, James O. McDonald, Everett, Everett & McDonald, Terre Haute, IN, Attorneys for Appellant.

Mark D. Hassler, Hunt, Hassler & Lorenz, LLP, Terre Haute, IN, Attorney for Appellees.

## OPINION

BAKER, Judge.

Appellant-plaintiff Claudette Cain appeals the trial court's grant of summary judgment in favor of appellees-defendants Roger and Lucy Griffin (collectively, the Griffins) and Auto–Owners Insurance (Auto–Owners), claiming that a genuine issue of material fact existed as to whether Auto–Owners—who was the Griffins' insurance company—breached a duty to deal with her in good faith. Concluding that Auto–Owners was not under a duty to deal with Cain in good faith because she was not its insured and did not occupy the position of a third party beneficiary under that insurance agreement, we affirm the judgment of the trial court.

### FACTS

Auto–Owners issued an insurance policy to the Griffins that afforded liability coverage for their restaurant business located in Rockville. On June 8, 2001, Cain patronized the restaurant and, at some point, she

fell in the parking lot that was allegedly slick and oil-covered. The fall caused injuries to Cain's back and side. Cain left the restaurant and sought medical care at the Rockville Emergency Clinic, where a physician examined her. Cain was then sent to the emergency room at West Central Community Hospital (West Central) in Clinton, where she was treated and released.

On December 13, 2001, Bruce Aukerman—Cain's legal counsel—sent correspondence to the Griffins. While Cain contends that this correspondence was also sent to Auto–Owners, there is no evidence in the record to support the assertion that Auto–Owners ever received Aukerman's letter. In that correspondence, Aukerman included an invoice from West Central for treatment of the injuries that Cain received as a result of her fall, and instructed the Griffins to forward the correspondence and enclosures to their insurance company and/or attorney.

As there was no reply to the December 2001 correspondence, Cain filed a complaint against the Griffins on May 3, 2002, where she alleged that she had incurred medical and related expenses as a result of her fall at the restaurant. On May 28, 2002, attorney Mark Hassler entered his appearance for the Griffins whom Auto–Owners had retained to represent them. Thereafter, on October 28, 2002, Cain submitted her responses to discovery requests that had been served on her by the Griffins. Those responses included an itemized list of Cain's medical expenses, including the previously submitted statement from West Central, a statement from a physician, and a bill from a diagnostic facility. However, Auto–Owners made no immediate payment on Cain's claim.

Cain then amended her complaint on March 5, 2003, where she added a count against Auto–Owners, alleging that the company had full knowledge of Cain's injuries, and that it "breached its duty that it owed to ... [Cain] to act in good faith and deal fairly with [her]." Appellant's App. p. 47. As a result, Cain sought judgment from Auto–Owners in the amount of $1159.50 in compensatory damages "and for exemplary damages in a sum sufficient to punish and deter Defendant, Auto Owners and others similarly situated from the same or similar conduct in the future...." Appellant's App. p. 48. In July 2003, Auto–Owners tendered a check to Cain for her medical bills. However, no amount was included as interest for the alleged late payment of Cain's medical expenses. Cain refused to cash the check or accept the offer of settlement from Auto–Owners.

On or about January 7, 2004, Auto–Owners filed a motion for summary judgment, claiming, among other things, that no demand for payment was ever submitted to Auto–Owners. In essence, Auto–Owners contended that Cain desired to find that the company committed an act of bad faith because it failed to pay for medical expenses that she had never requested them to pay. Auto–Owners went on to allege that Cain was not entitled to recover punitive damages because Cain never made a claim for payment and because Auto–Owners never denied a claim that had actually been presented to them. Finally, Auto–Owners argued that it was entitled to summary judgment because there was no duty to deal in good faith with Cain because there was no contractual or fiduciary relationship between Auto–Owners and Cain. Following a hearing, the trial court granted Auto–Owners's motion for summary judgment. Cain now appeals.

## DISCUSSION AND DECISION

### I. Standard Of Review

We begin our discussion by setting forth the relevant standard of review. As we

stated in *Little Beverage Co., Inc. v. De-Prez,* 777 N.E.2d 74, 77–78 (Ind.Ct.App. 2002), *trans. denied:*

> [S]ummary judgment is appropriate when no designated genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Our standard of review is not altered by cross motions for summary judgment on the same issues. A party appealing the denial of summary judgment carries the burden of persuading this court that the trial court's decision was erroneous. The movant must demonstrate the absence of any genuine issue of fact as to a determinative issue and only then is the non-movant required to come forward with contrary evidence. This court may not search the entire record but may only consider the evidence that has been specifically designated. All pleadings, affidavits, and testimony are construed liberally and in a light most favorable to the nonmoving party.

Additionally, the trial court's order granting or denying a motion for summary judgment is cloaked with the presumption of validity. *Pedraza v. City of East Chicago,* 746 N.E.2d 94, 99 (Ind.Ct.App.2001). And the purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Hermann v. Yater,* 631 N.E.2d 511, 513 (Ind. Ct.App.1994).

### II. Cain's Claim

Cain argues that the entry of summary judgment for Auto–Owners was erroneous because genuine issues of material fact exist surrounding the claims that she had advanced against it. Specifically, Cain asserts that although she had not contracted with Auto–Owners, she was a third party beneficiary under the agreement that had been executed between it and the Griffins.

Hence, Cain makes the claim that a genuine issue of material fact existed as to whether Auto–Owners dealt with her fairly and in good faith.

 In general, there exists a cause of action for the tortious breach of an insurer's duty to deal with its insured in good faith. *Erie Ins. Co. v. Hickman,* 622 N.E.2d 515, 518 (Ind.1993). The *Erie* court recognized that the obligation of good faith and fair dealing with respect to the discharge of an insurer's contractual obligation includes the duty to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payments; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim. *Id.* at 518–19. In order for a plaintiff to recover punitive damages from a breach of contract claim, the plaintiff must plead and prove the existence of an independent tort of the kind for which Indiana law recognizes that punitive damages may be awarded. *USA Life One Ins. Co. of Indiana v. Nuckolls,* 682 N.E.2d 534, 541 (Ind.1997). Punitive damages may be awarded only if there is clear and convincing evidence that the defendant "acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing." *Id.*

 Notwithstanding the pronouncements made in *Erie,* this court has made the following observations with regard to an insurer's duty in a third party context:

> While Indiana law recognizes a legal duty implied in all insurance contracts for an insurer to deal in good faith with its insured, ... this duty of good faith does not apply to an insurer's dealings with a claimant in a third party claim.

*Menefee v. Schurr,* 751 N.E.2d 757, 760 (Ind.Ct.App.2001), *trans. denied* (2002); *see Cromer v. Sefton,* 471 N.E.2d 700, 703 (Ind.Ct.App.1984) (there is no duty or fiduciary relation running from the insurer to the injured plaintiff. The insurer's only duty is to the insured on the contract).

*Brady v. Allstate Indemnity Co.,* 788 N.E.2d 916, 920 (Ind.Ct.App.2003); *see also Donald v. Liberty Mut. Ins. Co.,* 18 F.3d 474, 482 (7th Cir.1994) (recognizing that "it is true that in Indiana an injured third party cannot sue the tortfeasor's insurer for handling his claim in bad faith"). Applying these principles to the circumstances here, it is readily apparent that there was no duty on the part of Auto–Owners to deal with Cain in good faith. *See Brady,* 788 N.E.2d at 920. As discussed in the *FACTS,* the insurance contract existed between Auto–Owners and the Griffins. Cain occupied the status as a third-party claimant with regard to the insurance agreement, and she certainly cannot be considered a third party beneficiary of the contract between Auto–Owners and the Griffins with regard to the bad faith claim that she lodged against the company. Hence, Auto–Owners did not owe a duty to deal in good faith with Cain, and she cannot succeed upon her bad faith claim.[1] Therefore, the trial court properly granted Auto–Owners's motion for summary judgment.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., concurs.

SHARPNACK, J., dissents with opinion.

SHARPNACK, J. dissenting.

I respectfully dissent from the majority's conclusion that Cain is not a third-party beneficiary of the Griffins' insurance policy with Auto–Owners. Although the majority concludes that Cain is not a third-party beneficiary, it offers little rationale for that conclusion. I believe that an analysis of relevant cases indicates that Cain is a third-party beneficiary.

Third-party beneficiaries may directly enforce a contract in Indiana. *Mogensen v. Martz,* 441 N.E.2d 34, 35 (Ind.Ct.App. 1982). A third-party beneficiary contract requires that: (1) the intent to benefit the third party be clear; (2) the contract impose a duty on one of the contracting parties in favor of the third party; and (3) the performance of the terms necessarily render to the third party a direct benefit intended by the parties to the contract. *Id.*

In arguing that she is a third-party beneficiary, Cain relies upon the Seventh Circuit's opinion in *Donald v. Liberty Mutual Ins. Co.,* 18 F.3d 474 (7th Cir.1994). There, the plaintiff, Donald, injured his arm on property owned by the University of Evansville. *Id.* at 476. The University was insured by Liberty Mutual, and the policy provided:

COVERAGE C. MEDICAL PAYMENTS

1. Insuring Agreement.

---

[1] We are aware of our colleagues' view on the Seventh Circuit that an individual may—in some instances—occupy the status as a third party beneficiary under an insurance contract that is related to medical payment provisions. *See Donald v. Liberty Mut. Ins. Co.,* 18 F.3d 474, 482 (7th Cir.1994). Such a pronouncement is not binding on our courts and, even

so, the record shows that Auto–Owners did tender payment to Cain for her medical expenses, once the claim had actually been presented to them. Moreover, we do not read Indiana law to the extent that one who is injured by another necessarily becomes a third party beneficiary under the tortfeasor's insurance policy.

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations; provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limits of insurance. We will pay reasonable expenses for:

(1) First aid at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

2. Exclusions.

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an employee of any insured, if benefits for the "bodily injury" are payable or must be proved under a workers compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard."

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

*Id.* at 477–478. The "applicable limit of insurance" for Coverage C was $5,000. *Id.* at 478. Liberty Mutual refused to pay Donald, and Donald filed a claim against Liberty Mutual for breach of contract and breach of duty to deal in good faith. *Id.* at 476–477. Liberty Mutual filed a motion for summary judgment, and the district court held that Donald could not sue Liberty Mutual on its contract with the University and "that under Indiana law an insurer owes no duty of good faith dealings to claimants not privy to the contract between the insurer and the insured." *Id.* at 478–479. Therefore, the district court held that Donald could not sue Liberty Mutual on the ground that it had not dealt with his claim in good faith. *Id.* at 479.

The Seventh Circuit disagreed. The court noted that Indiana is not a "direct action" state and, thus, an injured person cannot sue the tortfeasor's insurance company directly. *Id.* at 480. However, "[t]he concept of direct action against an insurer applies when an injured party seeks to sue the insurer directly to recover sums for which the insured would otherwise be liable in tort." *Id.* The court noted that Coverage C explicitly provides that medical payment benefits will be made "regardless of fault" and held:

Coverage C is not limited to damages in the way of medical payments incurred

by the injured person on account of a tort committed by the insured; if Donald is entitled to medical payment benefits under Coverage C, it is not due to any liability on the part of the University. Hence Indiana's position on direct action is irrelevant to whether Donald can sue Liberty Mutual directly to recover the medical payment benefits.

\* \* \* \* \*

Donald's right to sue Liberty Mutual rests, not on whether Indiana has authorized direct actions against a tortfeasor's insurer, but rather on whether he is a third party beneficiary of the contract providing for medical payment benefits.

*Id.* at 480–481 (footnote omitted). The Seventh Circuit concluded that "[t]he weight of authority suggests that medical payment provisions regarding injured third parties are third party beneficiary contracts" and determined that it had "no reason to believe that Indiana would not follow this line of authority." *Id.* at 481. In fact, the court noted that one Indiana court had come close to this position. *Id.* (citing *Snow v. Bayne,* 449 N.E.2d 296 (Ind.Ct.App.1983), *reh'g denied,* and stating that "the court, applying Indiana law, allowed injured third parties to sue the insured's insurer directly, as third party beneficiaries under a no-fault automobile insurance policy, to recover 'personal protection insurance benefits'"). Therefore, the Seventh Circuit held "that Donald is not barred by Indiana's position on direct actions from bringing suit, in Count Two of his Complaint, directly against Liberty Mutual to recover the medical payment benefits provided by Coverage C" and "further that Donald is a third party beneficiary of the contract between the University and Liberty Mutual and that he is therefore entitled to sue Liberty Mutual on its contract with the University." *Id.*

Next, in considering Donald's bad faith claim, the court conceded that "[i]t is true that in Indiana an injured third party cannot sue the tortfeasor's insurer for handling his claim in bad faith." *Id.* at 482. However, because Donald was not claiming the medical payment benefits on account of any liability of the University but rather as a third party beneficiary of the medical payment provision, Liberty Mutual did owe him a duty of good faith dealing. *Id.* Thus, Donald could sue Liberty Mutual for bad faith. *Id.* Ultimately, the Seventh Circuit granted summary judgment to Donald on his breach of contract claim. *Id.* at 483. On the bad faith claim, the court determined that summary judgment for either party was inappropriate because genuine issues of material fact existed. *Id.* at 484.

While I recognize that the Seventh Circuit's decision in *Donald* is not binding authority, I find its analysis persuasive in this case. *See Chaffin v. Nicosia,* 261 Ind. 698, 703, 310 N.E.2d 867, 870 (1974) (holding that federal cases interpreting Indiana law are persuasive authority but do not control on questions of Indiana law), *superseded on other grounds.* As in *Donald,* here, the Griffins' policy with Auto–Owners provides:

COVERAGE C. MEDICAL PAYMENTS

1. Insuring Agreement

 a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

 (1) On premises you own or rent.

 (2) On ways next to premises you own or rent; or

 (3) Because of your operations;

 provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b. We will make these payments regardless of fault.** These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

2. Exclusions.

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an employee of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefit law or similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

Appellant's Appendix at 122–123 (emphasis added).

As in *Donald*, the policy provides for the payment of medical expenses for bodily injuries on the Griffins' property "regardless of fault." *Id.* Thus, I conclude that Cain's entitlement to the payment is not based upon the Griffins' fault, and Cain is a third-party beneficiary of the Griffins' policy with Auto–Owners. Because Cain's breach of contract and breach of duty of good faith claims are based upon her status as a third-party beneficiary, not upon her status as the injured party, Cain is entitled to maintain a breach of contract action and a breach of duty of good faith action against Auto–Owners. *See, e.g., Donald*, 18 F.3d at 481–482. Consequently, I cannot agree with the majority's decision that "there was no duty on the party of Auto–Owners to deal with Cain in good faith" or that Cain "certainly cannot be considered a third party beneficiary of the contract between Auto–Owners and the Griffins . . . ." Op. at 44.

Having determined that Auto–Owners had a duty to deal with Cain in good faith, I believe that we should then determine whether genuine issues of material fact exist and whether Auto–Owners is entitled to judgment as a matter of law on Cain's claim. Our supreme court has held that the "obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a set-

tlement of his claim." *Erie Ins. Co. v. Hickman by Smith,* 622 N.E.2d 515, 519 (Ind.1993). "[A] good faith dispute about the amount of a valid claim or about whether the insured has a valid claim at all will not supply the grounds for a recovery in tort for the breach of the obligation to exercise good faith." *Id.* at 520. Further, the lack of diligent investigation alone is not sufficient to support an award. *Id.* However, an insurer that denies liability knowing that there is no rational, princi-pled basis for doing so has breached its duty. *Id.*

Generally, "tort damages for the breach of the duty to exercise good faith will likely be coterminous with those recoverable in a breach of contract action." *Id.* at 519. The mere finding by a preponderance of the evidence that the insurer committed the tort will not, standing alone, justify the imposition of punitive damages. *Id.* Thus, the court in *Erie* held that a breach of duty of good faith must be proven by a preponderance of the evidence and that damages for a breach of good faith action are likely the same as those recoverable in a breach of contract action. However, our supreme court later held in *Freidline v. Shelby Ins. Co.,* 774 N.E.2d 37, 40 (Ind.2002), that "[t]o prove *bad faith,* the plaintiff must establish, with clear and convincing evidence, that the insurer had knowledge that there was no legitimate basis for denying liability." (emphasis added). *See also Donald,* 18 F.3d at 484 (holding that the plaintiff was required to prove his bad faith claim by a preponderance of the evidence and to prove his punitive damages claim by clear and convincing evidence). Thus, it is unclear whether a plaintiff in a breach of good faith action has the burden of proving his claim by a preponderance of the evidence or by clear and convincing evidence. On the other hand, it is clear that punitive damages may be awarded in a breach of good faith action if there is clear and convincing evidence that the defendant "acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing, in the sum [that the jury believes] will serve to punish the defendant and to deter it and others from like conduct in the future." *Erie,* 622 N.E.2d at 519.

The majority states that even if *Donald* was binding, "the record shows that Auto–Owners did tender payment to Cain for her medical expenses, once the claim had actually been presented to them." Op. at 44 n. 1. Thus, the majority implies that even if it found *Donald* persuasive, it would have affirmed the trial court's grant of summary judgment to Auto–Owners on Cain's breach of duty of good faith claim because Auto–Owners did not refuse to pay Cain. The majority fails to address Cain's arguments that she submitted a demand for payment within the policy's one-year limitations period and that, even if she failed to do so, Auto–Owners waived the one-year limitations period. These are important issues that should be considered in determining whether the trial court properly granted summary judgment to Auto–Owners. *See, e.g., State Farm Mut. Auto. Ins. v. Brown,* 48 Ark.App. 136, 892 S.W.2d 519 (1995) (holding that the insured submitted reasonable proof of damages where the insurer "knew of the accident; knew of its liability under the policy; and knew the amount of benefits being claimed"); *Hufstetler v. International Indemnity Co.,* 183 Ga.App. 606, 359 S.E.2d 399 (1987) (holding that "an implied waiver may result from an insurer's silence and nonaction, especially where an insured's request on a matter is ignored by the insurer leading the insured to believe nothing further is required" where the insured

submitted a proof of loss without required medical bills and the insurer failed to contact the insured about the alleged insufficiency of her proof of loss until more than 90 days had elapsed); *see also Stewart v. Walker,* 597 N.E.2d 368, 375–376 (Ind.Ct. App.1992) ("We cannot but conclude that a duty of good faith dealing certainly must include an obligation to inform such a claimant of conditions precedent in the insurance contract, the more so when the nonparty claimant has asked whether the insurer requires any additional information in order to process the claim."), *reh'g denied.*

In summary, I disagree with the majority regarding whether Cain is entitled to maintain an action for breach of good faith against Auto–Owners. Further, I believe that my colleagues and I should address Cain's arguments regarding whether she made a demand for payment to Auto–Owners, whether Auto–Owners waived the requirement for a demand within the one-year limitations period in the policy, and the proper burden of proof in a breach of good faith action. For these reasons, I respectfully dissent.