ATTORNEY FOR APPELLANT
James O. McDonald
Terre Haute, Indiana

ATTORNEY FOR APPELLEES
Mark D. Hassler
Terre Haute, Indiana

# In the
# Indiana Supreme Court

No. 61S01-0509-CV-422

CLAUDETTE CAIN,

*Appellant (Plaintiff below)*,

v.

ROGER GRIFFIN, LUCY GRIFFIN,
AND AUTO-OWNERS INS.,

*Appellees (Defendants below)*.

Appeal from the Parke Circuit Court, No. 61C01-0205-PL-134
The Honorable Michael H. Eldred, Special Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 61A01-0409-CV-404

**June 21, 2006**

**Sullivan, Justice.**

Claudette Cain sued Roger and Lucy Griffin's insurance company after a dispute arose over payments due Cain for injuries she suffered when she was injured in a fall at the Griffins' restaurant. Cain contends she is a "third-party beneficiary" of the Griffins' insurance policy and that she is entitled to maintain a claim for "bad faith" against the insurance company in addition to her claim for benefits under the policy. Applicable contract law permits Cain's third-party beneficiary claim to go forward but she has no bad-faith claim against the insurance company under applicable tort law.

**Background**

Roger and Lucy Griffin own the Rockville Pastime Restaurant in Parke County, Indiana. Auto-Owners Insurance Company issued a policy to the Griffins that provided commercial property coverage and commercial liability coverage for the Restaurant. On June 8, 2001, Claudette Cain visited the Restaurant and slipped and fell in the parking lot, causing injuries to her back and side. Cain was treated at and released from the West Central Community Hospital in Clinton, Indiana, for her injuries.

On December 13, 2001, Cain's lawyer sent correspondence to the Griffins, which included an invoice from the hospital and instructed the Griffins to refer the matter to their insurance company or attorney. While Cain contends that this correspondence was also sent to Auto-Owners, there is no evidence in the record that Auto-Owners ever received the letter. Auto-Owners denied receiving this correspondence.

On May 3, 2002, Cain filed a complaint against the Griffins, alleging that their negligence resulted in her injuries. Auto-Owners, however, made no immediate payment on Cain's claim. On March 5, 2003, Cain amended her complaint, naming Auto-Owners as a party and seeking compensatory and punitive damages. She alleged that Auto-Owners had full knowledge of her injuries, and, therefore, its failure to pay her for medical expenses as provided for in the medical payments provision, the "Coverage C" section of the Griffins' policy, was a breach of its duty to deal with her in good faith. Cain sought judgment from Auto-Owners for $1,159.50 in compensatory damages, plus exemplary damages "in a sum sufficient to punish and deter Defendant, Auto Owners and others similarly situated from the same or similar conduct in the future." Appellant's App. at 48.

On July 22, 2003, Auto-Owners tendered to Cain a check in the amount $1,159.50 for her medical bills but included no amount for the interest or allegedly late payment of the expenses. Cain refused to cash the check or accept a settlement offer from Auto-Owners. On January 8, 2004, Auto-Owners moved for partial summary judgment, arguing, among other things, that be-

cause it did not receive a timely claim from Cain, it had no duty to pay the bills or to deal with her in good faith absent a contractual or fiduciary relationship.

The trial court granted Auto-Owners' motion for summary judgment. Cain appealed, and the Court of Appeals affirmed the trial court's ruling. Cain v. Griffin, 826 N.E.2d 41 (Ind. Ct. App. 2005). Cain sought, and we granted, transfer. 841 N.E.2d 184 (Ind. 2005).

**Discussion**

On appeal, Cain reasons, "although she had not contracted with Auto-Owners, she was a third party beneficiary under the agreement that had been executed between it and the Griffins." Cain, 826 N.E.2d at 43. Cain further argues that summary judgment was erroneous because there existed a genuine issue of material fact as to whether Auto-Owners dealt with her in good faith. The Court of Appeals reviewed that facts and relevant caselaw and then concluded that "it [was] readily apparent that there was no duty on the part of Auto-Owners to deal with Cain in good faith." Id. at 44. The court's reasoning was as follows:

> Cain occupied the status as a third-party claimant with regard to the insurance agreement, and she certainly cannot be considered a third party beneficiary of the contract between Auto-Owners and the Griffins with regard to the bad faith claim that she lodged against the company. Hence, Auto-Owners did not owe a duty to deal in good faith with Cain, and she cannot succeed upon her bad faith claim. Therefore, the trial court properly granted Auto-Owners's motion for summary judgment.

Id. (footnote omitted). While we agree with the court's position on bad faith, we disagree with its conclusion that Cain is not a third-party beneficiary.

**I**

Cain argues that the decision of the Court of Appeals conflicts with Erie Ins. Co. v. Hickman, 622 N.E.2d 515 (Ind. 1993); with Snow v. Bayne, 449 N.E.2d 296 (Ind. Ct. App. 1983), transfer denied, and Stewart v. Walker, 597 N.E.2d 368 (Ind. Ct. App. 1992); and with Donald v. Liberty Mut. Ins. Co., 18 F.3d 474 (7th Cir. 1994).

3

In <u>Erie Ins. Co. v. Hickman</u>, Hickman and Smith filed a first-party claim against Erie Insurance Company, seeking recovery for the breach of an insurance contract and for punitive damages because Erie had denied their claims. <u>Erie</u>, 622 N.E.2d at 517. The trial court entered judgment on the jury's verdict, awarding both compensatory and punitive damages. <u>Id.</u> On remand,[1] the Court of Appeals reversed the punitive damages award on grounds that punitive damages were not recoverable in a breach of contract action. <u>Id.</u> at 517-18.

This Court granted transfer "to reaffirm the existence of a duty that an insurer deal in good faith <u>with its insured</u>, and to recognize a cause of action in tort for the breach of that duty." <u>Id.</u> at 517 (emphasis added).[2] We noted that Indiana law had long recognized an implied duty for an insurer to deal in good faith with its insured. <u>Id.</u> at 518. We went on to explain the nature of this relationship between the parties:

> Clearly, a relationship exists between an insurer and its insured because they are in privity of contract. However, the existence of a contract, standing alone, does not give rise to the required "special relationship" to support imposition of a tort duty. Rather, it is the unique character of the insurance contract which supports the conclusion that there is a "special relationship." This contractual relationship is at times a traditional arms-length dealing <u>between two parties, as in the initial purchase of a policy</u>, but is also at times one of a fiduciary nature, <u>see, e.g.,</u> <u>Richey v. Chappell</u>, [594 N.E.2d 443, 447 (Ind. 1992)] (<u>statements from the insured to the insurer</u> concerning an occurrence which may be made the basis of a claim by a third party are privileged from disclosure by the attorney-client privilege), and, at other times, an adversarial one, <u>as here in the context of a first-party claim</u>. Easily foreseeable is the harm that proximately results to an insured, who has a valid claim and is in need of insurance proceeds after a loss, if good faith is not exercised in determining whether to honor that claim. Given the <u>sui generis</u> nature of insurance contracts, then, we conclude that it is in society's interest that there be fair play <u>between insurer and insured</u>. These factors, coupled with our

---

[1] In the original appeal, the Court of Appeals had reversed the award of punitive damages, and we granted transfer and remanded for reconsideration because the Court of Appeals had applied an erroneous standard of review. <u>Erie Ins. Co. v. Hickman</u>, 605 N.E.2d 161 (Ind. 1992).

[2] We ultimately reversed the punitive damages award and affirmed the compensatory damages award because we concluded that the jury could not reasonably find that Erie had acted in bad faith. <u>Erie Ins. Co. v. Hickman</u>, 622 N.E.2d 515, 523 (Ind. 1993).

> return to the rule of no punitive damages in contract cases, leads us to conclude that recognition of a cause of action for the tortious breach of an insurer's duty to deal with its insured in good faith is appropriate.

Id. at 518-19 (citation omitted) (emphases added). It is clear from this discussion that this "special relationship" exists between an insurer and its insured in a first-party claim. Our opinion did not identify any duty of good faith that an insurer owes a third-party claimant. As Erie dealt with the duty of an insurer to its insured, and as Cain is only a third party to the contract between Auto-Owners and the Griffins, we see no conflict between the opinion of the Court of Appeals here and our holding in Erie.

## B

In Snow v. Bayne, the plaintiffs were passengers in a car when the driver drove off the road and struck a tree. 449 N.E.2d 296, 297 (Ind. Ct. App. 1983). The plaintiffs sought recovery of, among other things, personal protection insurance benefits from the driver's insurance company as third-party beneficiaries to the no-fault insurance policy. Id. The trial court granted summary judgment in favor of the insurance company on grounds that the claims "were tort claims and that under Indiana law an injured party cannot maintain a direct action against a tortfeasor's insurer." Id. at 298. The Court of Appeals, determining that the trial court had "misperceived the nature of the claims" against the insurer, noted that "[a]n action against an insurance company seeking recovery of benefits under a no-fault automobile insurance policy is a contract action, not an action for personal injury." Id. (citations omitted). The court concluded that under the clear terms of the insurance contract, the plaintiffs were eligible for personal protection insurance benefits, and therefore had a contractual right of action against the insurer. Id. at 300. We denied transfer.

Snow certainly supports Cain's argument that she is entitled to pursue Auto-Owners as a third-party beneficiary of its contract with the Griffins. But it sheds no light on whether any additional tort remedies are available.

5

In Stewart v. Walker, Stewart was a passenger in BeCraft's vehicle when it collided with Walker's vehicle. Walker was an uninsured motorist. Both BeCraft's vehicle and Stewart were covered by BeCraft's uninsured motorist policy issued by Nationwide Mutual Insurance Company and Stewart's uninsured motorist policy issued by Hawkeye Security. Stewart, 597 N.E.2d at 369-70. Stewart filed suit against Walker, obtained a default judgment, and was awarded damages. Id. Stewart then sought satisfaction of judgment from Nationwide and Hawkeye. Id. at 370. After both insurers refused to pay, Stewart filed for a declaratory judgment as to their obligations. The trial court denied Stewart summary judgment, finding that the insurers were liable under their respective insurance policies but not bound by the default judgment against Walker. Id. The Court of Appeals reversed, finding that because the insurers were on notice of Stewart's underlying suit and each failed to intervene, they were bound by the default judgment and were liable for the judgment under the uninsured motorist coverage policies. Id. at 376. The court stated that while "insurance companies have a duty to assist the policy holder from whom they took premiums . . . , we believe it sound policy to also impose a duty on an insurer faced with an uninsured motorist claim made by an injured passenger of its insured of bearing itself with all good faith towards the claimant." Id. at 375 (quotations omitted).

Cain, characterizing this statement as the court's holding, asserts that the decision of the Court of Appeals in her case is contrary to that in Stewart. However, the statement in Stewart to which Cain refers was made in the following context. Nationwide had argued in its motion for summary judgment that Stewart had failed to comply with conditions precedent set out in the insurance policy. Id. at 374. But when Stewart had asked whether Nationwide required any additional information in order to process the claim, Nationwide had remained silent. Id. at 375-76. The Court of Appeals found that it could not "condone Nationwide's silence in regard to contractual conditions unknown to Stewart," and stated that "[w]e think requiring disclosure of the conditions precedent, in the facts and circumstances of this case, a prerequisite to their enforcement." Id. (emphasis added).

The statement in Stewart on which Cain relies concerning the duty of an insurance company to a nonparty applies specifically to a situation where an insurance company seeks to avoid its payment obligations by arguing that a third-party claimant did not comply with conditions

6

that the insurance company refused to disclose. This is not authority for Cain's assertion that Auto-Owners owes to her, by virtue of her status as a third-party claimant, a duty of good faith dealings.

C

We now turn to Cain's argument that the decision of the Court of Appeals is in conflict with a Seventh Circuit decision, Donald v. Liberty Mut. Ins. Co., 18 F.3d 474 (7th Cir. 1994). Judge Sharpnack, dissenting from the opinion of the Court of Appeals, agrees with Cain on this point. His dissent would follow Donald and hold that Cain is a third-party beneficiary of the contract between Auto-Owners and the Griffins and that Auto-Owners had a duty to deal with her in good faith.

In Donald, Buente, an employee of the University of Evansville, gave Donald permission and instruction to use laundry equipment owned by the University. Donald, 18 F.3d at 477. Donald, in an attempt to remove his clothes from the University's water extractor without first turning the machine off, seriously injured his hand. Id. Liberty Mutual Insurance Company insured the University for, among other things, medical payments up to $5,000 to persons injured on the University's premises regardless of fault ("Coverage C"). Id. After mail and telephone correspondences, Liberty Mutual eventually offered to pay Donald $5,000 in exchange for Donald's release of any liability of Buente and the University. Id. at 478. Donald refused the settlement offer, and Liberty Mutual refused to pay Donald. Donald then sued Liberty Mutual, alleging that Liberty Mutual had breached its insurance contract and had dealt with him in bad faith.[3] Id. The district court granted summary judgment in favor of Liberty Mutual. Donald appealed. Id. at 479.

With respect to the breach of contract claim, Donald argued on appeal that he was eligible for medical payments benefits under Coverage C of the insurance contract. Liberty Mutual did not dispute this claim, but argued that Donald had not submitted the necessary paperwork

---

[3] Donald also sued Buente and the University, alleging negligence, but those claims settled out of court. Donald v. Liberty Mut. Ins. Co., 18 F.3d 474, 478 (7th Cir. 1994).

required by the reporting provision of Coverage C and that, in any case, Donald was not entitled to sue Liberty Mutual to enforce the provisions of its contract with the University. Id. With respect to the bad faith dealings claim, Donald argued that "it was bad faith for Liberty Mutual to offer him the $5,000 payment to which he was entitled under Coverage C in exchange for a release of all of his claims against the University and Buente." Id. Liberty Mutual argued that its settlement offer was not made in bad faith because Donald's eligibility for medical payments benefits was unclear and Donald's negligence claims against Buente and the University were weak. Id.

The Seventh Circuit found that Donald was entitled to sue Liberty Mutual to enforce the provisions of its contract with the University. The court noted that because Indiana is not a "direct action" state, Donald could not sue Liberty Mutual directly for the alleged negligence of Buente and the University. Id. at 479-80. But noting that this concept applied only in a tort context, not in a contracts claim, the court explained:

> It does not follow from this, however, that Donald cannot sue Liberty Mutual to recover the $5,000 medical payment benefits which he claims under Coverage C. The concept of direct action against an insurer applies when an injured party seeks to sue the insurer directly to recover sums for which the insured would otherwise be liable in tort. But Coverage C is not limited to damages in the way of medical payments incurred by the injured person on account of a tort committed by the insured; if Donald is entitled to medical payment benefits under Coverage C, it is not due to any liability on the part of the University. Hence Indiana's position on direct action is irrelevant to whether Donald can sue Liberty Mutual directly to recover the medical payment benefits.

Id. at 480 (citations omitted). The court then determined that Donald's right to sue Liberty Mutual rested instead on whether he was a third-party beneficiary of the insurance contract. Id. at 481. The court analyzed Indiana law on third-party beneficiaries to contracts and determined that "[t]he weight of authority suggests that medical payment provisions regarding injured third parties are third party beneficiary contracts." Id. The court concluded that Donald was a third-party beneficiary to the contract between the University and Liberty Mutual, and, therefore, entitled to sue Liberty Mutual to enforce its contract with the University. Id.

8

The court then held that, as a third-party beneficiary, Donald could sue Liberty Mutual for dealing in bad faith. The court acknowledged that under Indiana law "an injured third party cannot sue the tortfeasor's insurer for handling his claim in bad faith." Id. at 482 (citing Eichler v. Scott Pools, Inc., 513 N.E.2d 665, 667 (Ind. Ct. App. 1987). But the court made a distinction between the rights to sue of a third-party claimant and a third-party beneficiary:

> [I]f Donald were merely a claimant for damages owing him on account of an alleged tort committed by the University, as in Count One of his Complaint (alleging negligence on the part of the University and its employee), Liberty Mutual would owe him no duty to settle his claim and he could not sue even if Liberty Mutual acted in bad faith. Because, however, Donald is not claiming the medical payment benefits on account of any liability of the University but rather as a third party beneficiary of the medical payment provision, Liberty Mutual does owe him a duty of good faith dealing.

Id. (citing Restatement (Second) of Contract §§ 205, 304 (1979)).

Persuaded by the court's reasoning in Donald, Judge Sharpnack's dissent contends that (1) Cain is a third-party beneficiary of the insurance contract between Auto-Owners and the Griffins; and (2) Cain is entitled to maintain her breach of contract and breach of duty of good faith actions against Auto-Owners "[b]ecause Cain's breach of contract and breach of duty of good faith claims are based upon her status as a third-party beneficiary, not upon her status as the injured party." Cain v. Griffin, 826 N.E.2d 41, 47 (Ind. Ct. App. 2005).

## II

We agree with Judge Sharpnack and the Donald court that a third-party beneficiary may sue the insurer directly to enforce the contract between the insurer and the insured. In OEC-Diasonics, Inc. v. Major, we explained the circumstances under which a third party to a contract may sue to enforce the contract:

> To be enforceable, it must clearly appear that it was the purpose or a purpose of the contract to impose an obligation on one of the contracting parties in favor of the third party. It is not enough that performance of the contract would be of benefit to the third party. It must appear that it was the intention of one of the

9

parties to require performance of some part of it in favor of such third party and for his benefit, and that the other party to the agreement intended to assume the obligation thus imposed. The intent of the contracting parties to bestow rights upon a third party must affirmatively appear from the language of the instrument when properly interpreted and construed.

674 N.E.2d 1312, 1315 (Ind. 1996) (quotation and citations omitted).

We also agree that Cain was a third-party beneficiary to the medical payments coverage in the contract between Auto-Owners and the Griffins. The relevant part of that contract provides:

COVERAGE C. MEDICAL PAYMENTS
    1. Insuring Agreement.
        a. <u>We will pay medical expenses as described below</u> for "bodily injury" caused by an accident:
            (1) On premises you own or rent;
            (2) On ways next to premises you own or rent; or
            (3) Because of your operations;
            provided that:
                (1) The accident takes place in the "coverage territory" and during the policy period;
                (2) The expenses are incurred and reported to us within one year of the date of the accident; and
                (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.
        b. <u>We will make these payments regardless of fault.</u> These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:
            (1) First aid at the time of an accident;
            (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and
            (3) Necessary ambulance, hospital, professional nursing and funeral services.
    2. Exclusions.
    We will not pay expenses for "bodily injury":
        a. To any insured.
        b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.
        c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an employee of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefit law or similar law.
e. To a person injured while taking part in athletics.
f. Included within the "products-completed operations hazard".
g. Excluded under Coverage A.
h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

Appellant's App. at 122-123 (emphasis added).

It is clear from the language of the contract that the Griffins intended to require Auto-Owners to pay medical expenses for "bodily injury" to a third party—in this case, Cain—caused by an accident on the Griffins' premises, "regardless of fault." It is also clear that Auto-Owners intended to assume the obligation thus imposed.

Therefore, we agree with Judge Sharpnack that, as a third-party beneficiary, Cain may sue Auto-Owners directly to enforce the medical payment coverage provision of the contract between Auto-Owners and the Griffins.

But we do not find, as did Judge Sharpnack and the court in Donald, that a third-party beneficiary and the insurer has the "special relationship" described in Erie that would impose on the insurer a duty under tort law to deal with the third party in good faith. We found in Erie that an insurer and its insured have a special relationship that imposes on the insurer a duty of good faith dealing because of the arms-length contractual relationship between the two parties, the fiduciary nature of the contract, and the potentially adversarial nature of first-party claims that may occur as a result of the contractual relationship between the parties. Erie Ins. Co. v. Hickman, 622 N.E.2d 515, 518-19 (Ind. 1993). We found that "[g]iven the sui generis nature of insurance contracts . . . it is in society's interest that there be fair play between insurer and insured." Id. (emphasis added).

The relationship between a third-party beneficiary and the insurer is not one intentionally created by a close, fiduciary, or potentially adversarial contract and, as such, is not the "special

relationship" anticipated by this Court in <u>Erie</u>.  Thus, a third-party beneficiary cannot sue an insurer in a tort action for the insurer's failure to deal in good faith with a third-party beneficiary.

We hold that Cain, as a third-party beneficiary to the medical payments coverage of the insurance contract between Auto-Owners and the Griffins may sue Auto-Owners directly to enforce the contract.  However, because Auto-Owners does not owe to Cain a duty of good-faith dealing, Cain may not proceed on a tort claim against Auto-Owners for failure to deal in good faith.

**Conclusion**

Having previously granted transfer, thus vacating the Court of Appeals decision, Ind. Appellate Rule 58(A), we remand this matter to the trial court.  Cain is entitled to pursue her contract claims but not her tort claims against Auto-Owners.

Shepard, C.J., and Dickson and Rucker, JJ., concur.

Boehm, J., concurs in result, concluding that as a matter of law there is no bad faith claim on these facts, but agreeing with Judge Sharpnack that a third party beneficiary is not precluded from asserting a bad faith claim.