**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 25 2014, 9:52 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**PATRICK B. MCEUEN**
McEuen Law Office
Portage, Indiana

ATTORNEYS FOR APPELLEE:

**JULIA BLACKWELL GELINAS**
**DARREN A. CRAIG**
Frost Brown Todd LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FREDERICK CASHNER, SR. and LUCILLE CASHNER, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| vs. | ) | No. 64A04-1311-PL-555 |
| | ) | |
| WESTERN-SOUTHERN LIFE ASSURANCE COMPANY, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable William A. Alexa, Judge
Cause No. 64D02-1302-PL-1918

**June 25, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Frederick Cashner and Lucille Cashner (the Cashners) appeal the grant of a motion for costs and attorney fees filed by Western-Southern Life Assurance Company (Western-Southern) in a bad-faith action filed by the Cashners against Western-Southern concerning the disbursement of proceeds from a life insurance policy on the life of Cynthia Cashner. The Cashners present the following restated issue for review: Did the trial court err in granting Western-Southern's motion for costs and attorney fees upon grounds that the Cashners continued to litigate their counterclaim after it became frivolous, unreasonable, or groundless?

We affirm.

The facts favorable to the ruling are that on April 7, 1994, Western-Southern issued to the Cashners' son, Frederick C. Cashner Jr. (Frederick), a flexible-premium, adjustable life insurance policy, which included a spouse-term life insurance rider (spouse rider) that provided term life insurance on Frederick's wife, Cynthia M. Cashner (Cynthia). Frederick named Cynthia as his Class I beneficiary, and named his parents, the Cashners, as Class II beneficiaries for the insurance coverage on Frederick's life. With respect to the ownership and beneficiary of the spouse rider, the policy provided as follows:

> You, the policy owner, are Owner of this rider. The Insured is the beneficiary of this rider unless you designate someone else. You do this by special written request. If there is no beneficiary living at the death of the Insured Spouse, payment will be made to his or her estate.

*Appellants' Appendix* at 58.

On April 24, 2011, Frederick murdered Cynthia. He later pleaded guilty to that offense and was sentenced to a forty-five-year term of imprisonment. Cynthia's estate (the

2

Estate) was opened in Porter Superior Court. The Estate and the Cashners agree that the spouse rider was in full force and effect at the time of Cynthia's death. They disagree, however, as to who is entitled to receive payment of the policy proceeds. The Estate claims it is entitled to the proceeds because Frederick is disqualified from receiving benefits under Ind. Code Ann. § 29-1-2-12.1 (West, Westlaw current with all legislation of the Second Regular Session of the 118th General Assembly (2014) with effective dates through May 1, 2014),[1] which disqualified Frederick, the primary beneficiary, from receiving the proceeds of the policy because he murdered Cynthia. Also, the Estate claimed it was entitled to the proceeds because Frederick did not designate someone else as a beneficiary for the spouse rider, as was required in the policy. On the other hand, the Cashners claim that because they were named as class II beneficiaries in the policy, and because Cynthia did not survive Frederick, they were entitled to receive the proceeds. Accordingly, both submitted a demand to Western-Southern for payment of the policy proceeds.

On February 13, 2013, Western-Southern sent an email to the Cashners' counsel asking whether there was "still a dispute" between the Cashners and the Estate as to whom the proceeds of the life insurance policy should be paid. *Appellee's Appendix* at 7. On the same day, the Cashners' counsel responded that there was still a dispute regarding whether

---

[1] This statute states:

> (a) A person is a constructive trustee of any property that is acquired by the person or that the person is otherwise entitled to receive as a result of an individual's death, including property from a trust, if that person has been found guilty, or guilty but mentally ill, of murder, causing suicide, or voluntary manslaughter, because of the individual's death.

I.C. § 29-1-2-12.1(a).

3

the Estate or the Cashners were entitled to the policy proceeds. Counsel described the situation as an "impasse." *Id.* On February 20, 2013, Western-Southern filed a complaint for interpleader, asking the court to 1) compel the competing claimants to the policy proceeds to settle their claims, 2) issue an order permitting Western-Southern to deposit the proceeds with the Porter County Clerk, and 3) discharge Western-Southern from liability to the Cashners. On March 20, 2013, the court granted Western-Southern's motion, and on March 25, 2013, Western-Southern deposited the full amount of the insurance proceeds, including interest, with the Porter County Clerk.

On April 30, 2013, the Cashners filed an answer and counterclaim against Western-Southern alleging bad-faith failure to pay the policy proceeds to the Cashners. They also filed a cross-claim seeking a declaratory judgment that Western-Southern was guilty of bad-faith failure to pay. On May 3, 2013, Western-Southern sent a letter to the Cashners' counsel asking the Cashners to voluntarily dismiss their counterclaim against Western-Southern. Western-Southern also advised that if the Cashners refused to dismiss the counterclaim, Western-Southern would submit a motion to dismiss the counterclaim and might also seek an award of attorney's fees based on the maintenance of a groundless claim. The Cashners did not respond to this letter. On or about May 23, 2013, Western-Southern filed a motion to dismiss the counterclaim. On June 4, 2013, the trial court granted the motion to dismiss the counterclaim. The trial court certified this order under Indiana Trial Rule 54 (B) and ruled that Western-Southern should recover costs in accordance with Ind. Code Ann. § 34-52-1-1 (West, Westlaw current with all legislation of the Second Regular Session of the 118th General Assembly (2014) with effective dates through May 1, 2014).

4

The Cashners filed a motion to correct error and that motion was deemed denied on August 22, 2013. That ruling was not appealed.

On June 26, 2013, Western-Southern filed a motion seeking costs and attorney fees incurred as a result of the Cashners' counterclaim. On October 16, 2013, the trial court granted Western-Southern's motion for costs and attorney fees. The Cashners appeal that order.

Indiana generally follows the "American Rule", whereby parties pay their own attorney fees. Nevertheless, attorney fees are recoverable where authorized by statute or rule. *Estate of Kappel v. Kappel,* 979 N.E.2d 642 (Ind. Ct. App. 2012). Under I.C. § 34-52-1-1(b)(1), a court is authorized to award attorney fees if it finds that one of the parties "brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless[.]" It is upon this basis that Western-Southern sought attorney fees, and presumably this was the basis upon which the trial court granted Western-Southern's motion. A claim or defense is frivolous if (1) its primary purpose is to harass or maliciously injure a person, (2) the lawyer does not make a rational, good-faith argument on the action's merits, or (3) the lawyer does not support the action taken with a rational, good-faith argument for an extension, modification, or reversal of existing law. *Gillock v. City of New Castle*, 999 N.E.2d 1043 (Ind. Ct. App. 2013). "A claim or defense is unreasonable if, based on a totality of the circumstances, including the law and facts known at the time of filing, no reasonable attorney would consider that the claim or defense was worthy of litigation or justified." *Id.* at 1046 (quoting *Wyatt v. Wheeler,* 936 N.E.2d 232, 241 (Ind. Ct. App. 2010)). A claim is groundless only if no facts exist that support a legal claim

5

presented by the losing party. *Buschman v. ADS Corp.,* 782 N.E.2d 423 (Ind. Ct. App. 2003). A trial court's decision to award attorney's fees under § 34-52-1-1 is reviewed for an abuse of discretion. *Purcell v. Old Nat'l Bank*, 972 N.E.2d 835 (Ind. 2012). "A trial court abuses its discretion if its decision clearly contravenes the logic and effect of the facts and circumstances or if the trial court has misinterpreted the law." *Id.* at 843.

The trial court entered a general judgment in favor of Western-Southern regarding its motion for attorney fees. The court did not explain the basis of this ruling. We agree with the Cashners, however, that implicit in the court's ruling is the conclusion that the Cashners' counterclaim was frivolous, unreasonable, or groundless. Was it? At the time the counterclaim was filed, the state of the law in Indiana was that Indiana law did not permit third-party bad-faith claims against an insurer. In *Cain v. Griffin*, 849 N.E.2d 507, 515 (Ind. 2006), the Supreme Court explained this principle as follows:

> But we do not find, as did Judge Sharpnack and the court in [*Donald v. Liberty Mut. Ins. Co.,* 18 F.3d 474 (7th Cir. 1994)] that a third-party beneficiary and the insurer has the "special relationship" described in [*Erie*] that would impose on the insurer a duty under tort law to deal with the third party in good faith. We found in [*Erie*] that an insurer and its insured have a special relationship that imposes on the insurer a duty of good faith dealing because of the arms-length contractual relationship between the two parties, the fiduciary nature of the contract, and the potentially adversarial nature of first-party claims that may occur as a result of the contractual relationship between the parties. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518–19 (Ind.1993). …
>
> The relationship between a third-party beneficiary and the insurer is not one intentionally created by a close, fiduciary, or potentially adversarial contract and, as such, is not the "special relationship" anticipated by this Court in *Erie. Thus, a third-party beneficiary cannot sue an insurer in a tort action for the insurer's failure to deal in good faith with a third-party beneficiary.*

6

(Emphasis supplied.) Thus, the law clearly foreclosed the type of action that the Cashners filed against Western-Southern.

Upon appeal, the Cashners contend that because a single justice dissented from the majority's opinion in *Cain*, and that justice cited with approval the views expressed in Judge Sharpnack's dissenting opinion in this court's opinion in the same action, *see Cain v. Griffin*, 826 N.E.2d 41 (Ind. Ct. App. 2005), *vacated by Cain v. Griffin,* 849 N.E.2d 507, the question "was clearly a close call." *Appellants' Brief* at 7. Close call or not, *Cain* settled this question adverse to the Cashners' position several years before the Cashners filed their counterclaim. The Cashners also cite a Seventh Circuit opinion that "previously predicted that Indiana's Supreme Court would 'go the other way'". *See Donald v. Liberty Mut. Ins. Co.*, 18 F.3d 474 (7th Cir. 1994). Even assuming that the Cashners are correct with respect to the nature of the Seventh Circuit's prediction, that prediction predates the Indiana Supreme Court's decision on that issue by twelve years. *Cain* rendered that prediction incorrect.

We understand that the Cashners contend that *Cain* is distinguishable from the present case. Citing *Eberly v. Prudential Ins. Co.*, 2007 WL 541821 (N.D. Ind. 2007), the petitioners contend that, like Eberly, the Cashners were more than third-party beneficiaries because the policy required Western-Southern to pay benefits to the Cashners. In *Eberly*, the court expressed uncertainty as to whether *Cain* applies where the policy itself requires the insurer to pay benefits to "covered persons", and the plaintiff qualifies as a covered person. We conclude that *Eberly* provides no relief for the Cashners.

7

Clearly, the discussion to which the Cashners refer was not central to the court's disposition of the case, and therefore constituted dictum. As such, the views expressed by the *Eberly* court on this point were not binding, and not law. *See Henley v. State*, 881 N.E.2d 639 (Ind. 2008). Moreover, even if the court had decided an issue that would be helpful to the Cashners, that court's decisions do not constitute binding authority on this court. Finally, we note that the plaintiff in *Eberly* sought long-term disability benefits under an employee welfare benefit plan maintained and sponsored by a previous employer. In concluding that Eberly was "more than a third-party beneficiary", and that she and Prudential had "much, much closer to a fiduciary relationship than the plaintiff in *Cain*," *id.* at *10, the court noted that Eberly paid insurance premiums on the policy in question. The Cashners, on the other hand, paid no premiums. In summary, we find no valid legal basis for the Cashners' counterclaim for bad faith. To the contrary, settled law precluded such a claim. *See Cain v. Griffin*, 849 N.E.2d 507. Western-Southern did exactly what it was supposed to do under the circumstances, which is to say that it filed the interpleader action.

Next, the Cashners maintain that the trial court erred in awarding costs on the basis that they continued to litigate a claim that was frivolous, unreasonable, or groundless, when the trial court issued its ruling before the Cashners responded to the motion to dismiss. According to the Cashners, "[i]n order to be liable for fees and costs for continuing to litigate a claim after it has clearly become frivolous, unreasonable or groundless, a plaintiff must do more than simply ignore a demand for voluntary dismissal." *Appellant's Brief* at 5. The Cashners point is that the trial court erred in granting the motion without waiting

8

for a response from the Cashners regarding Western-Southern's motion to dismiss. We note that Western-Southern's motion to dismiss was filed on June 4, 2013. The hearing on that motion was not conducted until more than four months later. We find no indication in the record that the Cashners signaled in the interim that they were inclined to voluntarily dismiss their action, nor is there any indication they were even contemplating this. Indeed, we note that after the trial court granted the motion for attorney fees, the Cashners filed a motion to correct error, asking the court to reconsider its grant of Western-Southern's motion to dismiss the counterclaim. Clearly, the Cashners intended to continue to litigate the counterclaim and did not contemplate voluntarily dismissing it.

We conclude that the trial court did not abuse its discretion in determining that the Cashners continued to litigate their counterclaim against Western-Southern after it was clear that the counterclaim was frivolous, unreasonable, and groundless. We affirm the trial court's grant of attorney fees to Western-Southern on that basis.

Judgment affirmed.

MATHIAS, J., and PYLE, J., concur.