

FILED

Oct 26 2018, 7:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Jon Orlosky<br>Muncie, Indiana | Stephen J. Peters<br>David I. Rubin<br>Pamela A. Paige<br>Plunkett Cooney, P.C.<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| M Jewell, LLC,<br><br>*Appellant-Plaintiff,*<br><br>v.<br><br>Roger Bainbridge, in his capacity as Grant County Auditor; Sarah A. Melford, in her capacity as County Treasurer; John Lawson, in his capacity as a Grant County Commissioner; Mark E. Bardsley, in his capacity as a Grant County Commissioner; SRI, Incorporated,<br><br>*Appellees-Defendants.* | October 26, 2018<br><br>Court of Appeals Case No. 18A-MI-36<br><br>Appeal from the Grant Superior Court<br><br>The Honorable Marianne L. Vorhees, Special Judge<br><br>Trial Court Cause No. 27D01-1409-MI-141 |

**Tavitas, Judge.**

## Case Summary

M Jewell, LLC ("M Jewell") appeals the trial court's grant of summary judgment to SRI, Incorporated ("SRI"). We affirm.

## Issue

M Jewell raises one issue, which we restate as whether the trial court properly granted summary judgment to SRI on M Jewell's third-party beneficiary claim.

## Facts

This case is about whether the purchasers of real estate in a tax sale are third-party beneficiaries of contracts between SRI and Grant County. In 1994, Grant County, Indiana, entered into a Services Master Agreement ("SMA") with SRI. In 2010, Grant County and SRI entered into a Tax Sale Support Services Addendum to the SMA ("Addendum") and a 2010 Tax Sale Workplan—Grant County ("Workplan") (collectively, "Agreements"). Under the Agreements, SRI agreed to perform certain services related to tax sales in Grant County, including the preparation and mailing of notices to property owners with delinquent property taxes.

Farmers Mutual Insurance Company of Grant & Blackford Counties ("Farmers Mutual") owned property in Grant County. Farmers Mutual failed to update its mailing address with the Grant County auditor or treasurer, and Farmers Mutual accumulated delinquent property taxes. Farmers Mutual's real estate was placed on a list of properties to be sold at tax sale on September 23, 2010, and SRI sent the notices of tax sale. Because of the erroneous address in the

records, the notices were returned unclaimed. Neither SRI nor the auditor's office made any further attempt to notify Farmers Mutual of the tax sale or to locate a more accurate address.

[5] On September 23, 2010, M Jewell purchased the real estate at a tax sale in Grant County for $5,508.98. M Jewell later filed a petition for an order directing the auditor of Grant County to issue a tax deed, which the trial court granted. A tax deed was issued to M Jewell in December 2011. On February 27, 2012, Farmers Mutual filed a petition to set aside the tax deed and a motion for leave to pay funds into the court in the sum of $6,985.33 for the delinquent property taxes and interest. The trial court granted the motion for leave to pay funds into the court. The trial court, however, later denied Farmers Mutual's motion to set aside the tax deed.

[6] Farmers Mutual appealed the trial court's order. On appeal, this court concluded that the trial court erred by denying the motion to set aside the tax deed. *See Farmers Mut. Ins. Co. of Grant & Blackford Ctys. v. M Jewell, LLC*, 992 N.E.2d 751 (Ind. Ct. App. 2013), *trans. denied*. We noted that, under the statute in effect at the time, the auditor was statutorily required to research its records to determine a more complete or accurate address if both notices are returned due to incorrect or insufficient addresses. *Id.* at 756 (citing Ind. Code § 6-1.1-24-4). Because the auditor and SRI failed to perform the additional research, we concluded that the statutory notices were not in substantial compliance and the tax deed was void. *Id.* at 759-60. We directed the trial court to grant

Farmers Mutual's petition to set aside the tax deed. M Jewell was reimbursed $6,997.50 as the statutory refund payment for the real estate.

[7] In September 2014, M Jewell filed a complaint against Roger Bainbridge, in his capacity as Grant County Auditor; Sarah Melford, in her capacity as Grant County Treasurer; John Lawson, in his capacity as a Grant County Commissioner; Michael Burton, in his capacity as a Grant County Commissioner, (collectively, "Grant County"); and SRI. M Jewell alleged in Count I that Grant County was negligent in conducting the tax sale and that M Jewell had been damaged. In Count II, M Jewell alleged that it, as the purchaser of real estate in a tax sale, was a third-party beneficiary of Grant County's contracts with SRI and that M Jewell had suffered damages of $784,000.00.[1]

[8] Grant County filed a motion for summary judgment, and M Jewell filed a motion to dismiss Grant County as a defendant with prejudice. The trial court granted M Jewell's request and dismissed M Jewell's claims against Grant County with prejudice.

[9] SRI also filed a motion for summary judgment regarding M Jewell's third-party beneficiary claim. SRI argued that M Jewell's claims failed as a matter of law because M Jewell was not a third-party beneficiary of the contracts. SRI also

---

[1] The alleged damages were based on "a potential sale price of the property of $7,000.00 per acre" for 112.30 acres. Appellee's App. Vol. II p. 40.

argued that, even if M Jewell was a third-party beneficiary of the contracts, the SMA's terms precluded the damages sought by M Jewell. Finally, SRI argued that M Jewell had already received the statutory refund of the purchase price at the tax sale plus interest and that M Jewell was not entitled to a "windfall." Appellant's App. Vol. II p. 120. M Jewell filed its response to SRI's motion for summary judgment. At a hearing on the motion for summary judgment, SRI and M Jewell agreed that the issue was a matter of law appropriate for summary judgment.

[10] The trial court granted SRI's motion for summary judgment. Regarding the third-party beneficiary claim, the trial court found that, based on the language in the Agreements, "the intent is for SRI to provide the notices and the work necessary to hold the tax sale, to conduct the tax sale, and then to advise property owners that their property was sold in a tax sale and how to redeem it." *Id.* at 21-22. The trial court did not find "any language that evidences an intent to benefit tax sale purchasers, directly or indirectly." *Id.* at 22. The trial court noted that the "only intended beneficiaries of the SMA are Grant County and SRI" and that "[a]ny potential profit to a tax sale purchaser such as M Jewell is at best incidental to the performance of the SMA." *Id.* The trial court found, accordingly, that M Jewell was not a third-party beneficiary of the SMA.

[11] The trial court also found that, even if M Jewell qualified as a third-party beneficiary, M Jewell's claimed damages were precluded by the "SMA's limitation of liability provision." *Id.* at 24. Finally, the trial court also determined that M Jewell's remedy is wholly statutory, that Indiana Code

Section 6-1.1-24-4 "does not provide a private cause of action for M Jewell," and that "Grant County has made M Jewell whole by refunding to M Jewell the amount it bid for the tax sale purchase (plus interest)." *Id.* at 23, 25. The trial court, accordingly, granted SRI's motion for summary judgment. M Jewell now appeals.

## Analysis

[12] M Jewell appeals the trial court's grant of summary judgment to SRI. Summary judgment is appropriate only when the moving party shows there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. *Erie Indem. Co. for Subscribers at Erie Ins. Exch. v. Estate of Harris by Harris*, 99 N.E.3d 625, 629 (Ind. 2018), *reh'g denied*; *see also* Ind. Trial Rule 56(C). Once that showing is made, the burden shifts to the non-moving party to rebut. *Schoettmer v. Wright*, 992 N.E.2d 702, 705-06 (Ind. 2013). When ruling on the motion, the trial court construes all evidence and resolves all doubts in favor of the non-moving party. *Id.* at 706. We review the trial court's ruling on a motion for summary judgment de novo, and we take "care to ensure that no party is denied his day in court." *Id.* "We limit our review to the materials designated at the trial level." *Gunderson v. State, Indiana Dep't of Nat. Res.*, 90 N.E.3d 1171, 1175 (Ind. 2018).

[13] M Jewell and SRI agreed below that there are no genuine issues of material fact in this case. Rather, the issue is whether SRI is entitled to judgment as a matter of law on M Jewell's third-party beneficiary claim.

[14] M Jewell first argues that the trial court erred when it determined M Jewell was not a third-party beneficiary to Grant County's Agreements with SRI. "Generally, only parties to a contract or those in privity with the parties have rights under the contract." *OEC-Diasonics, Inc. v. Major*, 674 N.E.2d 1312, 1314-15 (Ind. 1996).

> One not a party to an agreement may nonetheless enforce it by demonstrating that the parties intended to protect him under the agreement by the imposition of a duty in his favor. To be enforceable, it must clearly appear that it was the purpose or a purpose of the contract to impose an obligation on one of the contracting parties in favor of the third party. It is not enough that performance of the contract would be of benefit to the third party. It must appear that it was the intention of one of the parties to require performance of some part of it in favor of such third party and for his benefit, and that the other party to the agreement intended to assume the obligation thus imposed.

*Id.* at 1315 (quoting *Kirtley v. McClelland*, 562 N.E.2d 27, 37 (Ind. Ct. App. 1990), *reh'g denied, trans. denied*).

[15] "The intent of the contracting parties to bestow rights upon a third party 'must affirmatively appear from the language of the instrument when properly interpreted and construed.'" *Id.* (quoting *Freigy v. Gargaro Co.*, 223 Ind. 342, 349, 60 N.E.2d 288, 291 (1945)). "However, it is not necessary that the intent to benefit a third party be demonstrated any more clearly than the parties' intent regarding any other terms of the contract." *Id.* (citing *Nash Eng'g Co. v. Marcy Realty Corp.*, 222 Ind. 396, 416-17, 54 N.E.2d 263, 271 (1944)). "The intent necessary to the third-party's right to sue is not a desire or purpose to confer a

particular benefit upon the third-party nor a desire to advance his interest or promote his welfare, but an intent that the promising party or parties shall assume a direct obligation to him." *Centennial Mortg., Inc. v. Blumenfeld*, 745 N.E.2d 268, 276 (Ind. Ct. App. 2001). We must read the contract as a whole when trying to ascertain the parties' intent. *OEC-Diasonics, Inc.*, 674 N.E.2d at 1315. We accept an interpretation of a contract that harmonizes its provisions. *Id.*

[16] Our supreme court last engaged in a significant analysis of third-party beneficiary claims in *Cain v. Griffin*, 849 N.E.2d 507 (Ind. 2006). In *Cain*, a customer slipped and fell in a restaurant parking lot. The customer brought a claim against the restaurant owners and their insurer. The trial court granted the insurer's motion for summary judgment.

[17] On appeal, our supreme court addressed the customer's claim that she was a third-party beneficiary to the medical payments coverage portion of the insurance policy.[2] The court concluded:

---

[2] The court analyzed the relevant part of the policy, which provided:

COVERAGE C. MEDICAL PAYMENTS

1.      Insuring Agreement.

      a.      We will pay medical expenses as described below for "bodily injury" caused by an accident:

           (1)      On premises you own or rent;

           (2)      On ways next to premises you own or rent; or

           (3)      Because of your operations;

      provided that:

It is clear from the language of the contract that the [restaurant owners] intended to require [the insurer] to pay medical expenses for "bodily injury" to a third party—in this case, [the customer]—caused by an accident on the [restaurant owners'] premises, "regardless of fault." It is also clear that [the insurer] intended to assume the obligation thus imposed.

---

    (1)      The accident takes place in the "coverage territory" and during the policy period;

    (2)      The expenses are incurred and reported to us within one year of the date of the accident; and

    (3)      The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b.      We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

    (1)      First aid at the time of an accident;

    (2)      Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

    (3)      Necessary ambulance, hospital, professional nursing and funeral services.

2.      Exclusions.

We will not pay expenses for "bodily injury":

a.      To any insured.

b.      To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c.      To a person injured on that part of premises you own or rent that the person normally occupies.

d.      To a person, whether or not an employee of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefit law or similar law.

e.      To a person injured while taking part in athletics.

f.      Included within the "products-completed operations hazard".

g.      Excluded under Coverage A.

h.      Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

*Cain*, 849 N.E.2d at 514-15.

*Cain*, 849 N.E.2d at 515.  The court, consequently, held that, "as a third-party beneficiary," the customer could sue the insurer "directly to enforce the medical payment coverage provision of the contract between" the insurer and the restaurant owners.[3]  *Id.*

[18]  Here, Grant County and SRI entered into three agreements:  the SMA, the Addendum, and the Workplan.  In the SMA, the parties agreed that SRI would perform certain tasks detailed in an addendum for each "service program." Appellee's App. p. 47.  The SMA also provided in relevant part:

> 5.  <u>Information To Be Provided By County</u>.  The County hereby agrees to provide SRI in a timely manner with all reports, data and information as requested by SRI and further agrees that SRI may rely on all such reports, data and information in performing the services set forth herein and in all addenda made a part hereof.
>
> 6.  <u>Limitation Of Liability</u>.  The County hereby agrees that in no event shall SRI be liable for any loss of profit or indirect, special, incidental or consequential damages as a result of the use by SRI of inaccurate, omitted, erroneous, fraudulent, or other insufficient information supplied to SRI by the County or its agents or employees under this Agreement, or by the actions, fault, failure or negligence of any individual not employed by or a principal of SRI.

---

[3] The court later concluded that, although the customer could sue the insurer as a third-party beneficiary to the medical payments coverage of the insurance contract, the insurer did not owe the customer "a duty of good-faith dealing" and the customer could not "proceed on a tort claim against [the insurer] for failure to deal in good faith." *Cain*, 849 N.E.2d at 515.

7. <u>Right To Contract</u>. SRI and the County each warrant that neither its execution and delivery of this Agreement, nor its performance of the provisions hereof is, or will constitute, a violation on its part of any applicable law or regulation or any contract, indenture or other agreement or relationship to which it is a party or by which it is bound, and each agrees that it will indemnify and save the other harmless from and against any loss, costs, liability, damages or expense by reason of any claim which may be asserted to the contrary by any third party.

*Id.* at 49. The Addendum describes the tax sale support services that SRI agreed to perform for Grant County and how SRI would be paid for the services. The Workplan went into greater detail regarding the tax sale support services SRI agreed to perform.

[19] In support of M Jewell's argument that it is a third-party beneficiary, M Jewell relies on the indemnity language of the SMA, which provided: "[E]ach agrees that it will indemnify and save the other harmless from and against any loss, costs, liability, damages or expense by reason of any claim which may be asserted to the contrary by any third party." *Id.* According to M Jewell, this language indicates that Grant County and SRI recognized the possibility of third-party liability. M Jewell argues: "If there is no intent to benefit third parties, i.e., tax sale purchasers, and thus creates that potential for liability, then why is there the need to indemnify for such liability?" Appellant's Br. p. 11.

[20] M Jewell seems to be conflating the concepts of a claim against either Grant County or SRI by a third party with third-party beneficiaries to a contract. To qualify as a third-party beneficiary, M Jewell was required to demonstrate that

Grant County and SRI intended to protect tax sale purchasers under the agreement. It is not enough that the performance of the contract would be of an incidental benefit to tax sale purchasers. The language cited by M Jewell merely indicates an intention that the parties indemnify each other; the language does not indicate an intention to benefit tax purchasers under the Agreements. Unlike in *Cain*, we find no language in the Agreements expressing an intent that Grant County or SRI assume a direct obligation to tax sale purchasers.

[21] None of the Agreements—the SMA, the Addendum, or the Workplan— indicate an intent to benefit tax sale purchasers directly or indirectly. We conclude the trial court properly found that M Jewell was not a third-party beneficiary of the Agreements between Grant County and SRI. *See, e.g.*, *Ayres v. Indian Heights Volunteer Fire Dep't, Inc.*, 493 N.E.2d 1229, 1235 (Ind. 1986) (rejecting a third-party beneficiary argument because the "contract entered into between the trustee and the fire department was for the benefit of the residents of [the township] as a whole" and the "obligation was not particularized as to any single resident of the township"); *Giles v. Brown Cty. ex rel. its Bd. of Comm'rs*, 868 N.E.2d 478, 480 n.3 (Ind. 2007) (noting that *Ayres*'s "holding remains intact with respect to the contract law third-party beneficiary theory" and holding that the "Brown County Board of Commissioners entered into the contract for ambulance services with Columbus Regional Hospital for the benefit of Brown County as a whole, not for any individual resident of Brown County"). There are no genuine issues of material fact, and SRI is entitled to judgment as a

matter of law on M Jewell's third-party beneficiary claim. The trial court properly granted SRI's motion for summary judgment.

[22] Alternatively, even if M Jewell was a third-party beneficiary, we would still conclude that its claim against SRI fails. We agree with the trial court's conclusions that M Jewell's remedy is statutory and that M Jewell has been made whole.

[23]
> It is a firmly-settled general rule that a purchaser at a tax sale buys at his own risk, and that, if the sale proves ineffectual, he cannot, in the absence of an express statute, recover from the county the money paid by him. The payment is regarded as a voluntary one, and he assumes all risks; for, as in judicial sales, there is no warranty in tax sales. Where an action is brought to recover money paid on the purchase of property at a sale, the party asking that it be refunded must show a statute providing that it shall be paid back to him.

*State ex rel. McKenzie v. Casteel*, 110 Ind. 174, 11 N.E. 219, 222 (1887). "The remedy for purchasers at invalid tax sales or holders of invalid tax deeds is wholly statutory." *Stephenson v. Martin*, 84 Ind. 160, 161 (1882). Indiana Code Chapter 6-1.1-25 details the refund procedure where a tax sale is declared invalid. *See* Ind. Code § 6-1.1-25-11 (discussing refunds where a tax sale is declared invalid after the issuance of a tax deed); Ind. Code § 6-1.1-25-10 (discussing refunds where a tax sale is declared invalid before the issuance of a tax deed).

[24] It is undisputed that M Jewell received $6,997.50 as the statutory refund payment for the real estate. *See* Appellant's Br. p. 13 (conceding that "M Jewell

did receive funds based on the sale being invalidated pursuant to Ind. Code 6-1.1-25-11 from the county"). Despite this payment, M Jewell claims that it is entitled to alleged lost profits in the amount of $784,000.00. M Jewell presents no statutory or common law authority that it is entitled to lost profits rather than the statutory refund amount. M Jewell's proposed damages would create a substantial windfall, and we have held that "the award of damages should not create a windfall for the injured party." *Warrick Cty. v. Waste Mgmt. of Evansville*, 732 N.E.2d 1255, 1260 (Ind. Ct. App. 2000). M Jewell received the statutory refund of damages. We conclude that, even if M Jewell was a third-party beneficiary of the Agreements between Grant County and SRI, M Jewell has been fully compensated by its receipt of the statutory refund. Again, there are no genuine issues of material fact, and SRI is entitled to judgment as a matter of law on M Jewell's damages claim. The trial court properly granted SRI's motion for summary judgment.

## Conclusion

M Jewell is not a third-party beneficiary to the Agreements between Grant County and SRI. Even if M Jewell was a third-party beneficiary, M Jewell has received the statutory compensation to which it is entitled. The trial court properly granted SRI's motion for summary judgment. We affirm.

Affirmed.

Brown, J., and Altice, J., concur.